Jason SMITH *v.* STATE of Arkansas

96-1180                                          946 S.W.2d 667

Supreme Court of Arkansas
Opinion delivered June 2, 1997

*William R. Simpson, Jr.*, Public Defender, by: *C. Renae Ford*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Jason Carlyle Smith appeals the trial court's denial of his motion to transfer multiple

charges brought against him to juvenile court. We agree with the trial court's decision and affirm.

On March 6, 1996, the State charged Smith, Michael Anthony McCurley, and Timothy Lee Holt with 45 counts that stemmed from a rash of residential burglaries in Pulaski County. The counts against Smith included seventeen charges of residential burglary, seventeen charges of theft for assorted values, and one charge of criminal attempt to commit burglary. A second information was later filed to add one charge against Smith for theft by receiving.

On May 7, 1996, a hearing on the motion to transfer the case was held. Detective Jim Potter of the Pulaski County Sheriff's Department testified for the State. He described a series of residential burglaries in one particular area of Pulaski County where typically a door would be kicked in and pillowcases would be used to carry items out of the residence. Items stolen included television sets, V.C.R.'s, jewelry, stereos, and weapons. Detective Potter told the trial court that the Sheriff's Department was alerted and deputies were dispatched to an address where Smith and McCurley were caught prior to entering a residence. He further testified that after Smith was read his *Miranda* rights, he was cooperative. Smith admitted to the officers that he had committed twelve burglaries and admitted that the value of the property taken was $46,603. Detective Potter added that Smith was born on May 17, 1978, making him almost age 18 at the time of the hearing. The other two defendants were ages 20 and 24. Only a small amount of the property stolen had been recovered.

The defense called two of Smith's aunts as witnesses. Shirley Dean Austin, Smith's great aunt, testified that Smith had been working on his GED while in detention and was also attending Bible Study. She stated that Smith could live with her because they had always gotten along and had never had problems. She added that she would give him transportation to work and that there was a school nearby where he could continue his GED studies. She further announced that she could enforce any restrictions placed on him.

Sharon Kaye Goodman, Smith's aunt, testified that she wanted Smith to come live with her. She also stated that she could supervise him and that she had never had any problem in getting him to follow her demands. Ms. Goodman added that Smith's father wanted nothing to do with him and that his mother lived in Odessa, Texas, and had sent him to Arkansas to live.

Smith's counsel argued to the trial court that there was no evidence of violence and no showing of a repetitive pattern of adjudicated offenses which would lead to a conclusion that Smith could not be rehabilitated. She specifically pointed to Smith's family support in Arkansas, despite the fact that his parents had abandoned their responsibility.

The trial court denied the transfer motion and, in doing so, stated:

> All right. The Court, more than anything else, is troubled by the number of burglaries and the amount — well, the value of the merchandise. And I do recall our having a case fairly similar to this some time ago. That individual was sent to juvenile court but, as I recall, there was a distinguishing point being that he had actually worked to help the officers retrieve most of the merchandise. Now, in this case — and I asked specifically that question about whether or not most of the merchandise was retrieved. It does not appear that that is the case.

> . . . .

> And that's one thing that concerns the Court, amongst other things. I think that under nine twenty-seven three eighteen a person can look at the character traits and mental maturity as being somehow lacking here in a situation where so many burglaries are committed and so much is taken. And I realize that there is some problems with perhaps his absence of parental guidance here. But I'm going to deny the motion to transfer.

Smith abstracts the trial court's ruling from the bench, which presents the court's reasons for denying the motion to transfer. He does not abstract two one-sentence orders denying two

motions to transfer.[1] The State does not raise a violation of Supreme Court Rule 4-2. Under these circumstances, we do not deem the abstract to be flagrantly deficient.

■ ■   Smith first complains that the trial court erred in denying his motion. In making its decision, the trial court considered the following statutory factors:

> (1)   The seriousness of the offense, and whether violence was employed by the juvenile in the commission of the offense;

> (2)   Whether the offense is part of a repetitive pattern of adjudicated offenses which would lead to the determination that the juvenile is beyond rehabilitation under existing rehabilitation programs, as evidenced by past efforts to treat and rehabilitate the juvenile and the response to such efforts;

> (3)   The prior history, character traits, mental maturity, and any other factor which reflects upon the juvenile's prospects for rehabilitation.

Ark. Code Ann. § 9-27-318(e) (Supp. 1995). In making its determination, the trial court is not required to give equal weight to each of these factors. *Brooks v. State*, 326 Ark. 201, 929 S.W.2d 160 (1996); *Booker v. State*, 324 Ark. 468, 922 S.W.2d 337 (1996); *Sebastian v. State*, 318 Ark. 494, 885 S.W.2d 882 (1994). However, if the trial court decides to try the juvenile as an adult, its decision must be supported by clear and convincing evidence, and the trial court's decision will not be overturned unless it is clearly erroneous. Ark. Code Ann. § 9-27-318(f) (Supp. 1995); *Booker v. State, supra*; *Davis v. State*, 319 Ark. 613, 893 S.W.2d 768 (1995).

Smith offers four reasons on appeal why the trial court was clearly erroneous in failing to transfer the case to juvenile court: (1) he is a good candidate for rehabilitation as evidenced by his cooperation with law enforcement officers and his family support; (2) there is no repetitive pattern of adjudicated offenses; (3) no violence was associated with the crimes; and (4) Smith, a minor, was influenced by his older accomplices, ages 20 and 24. The

---

[1] The record reflects two motions to transfer to juvenile court (one filed June 28, 1996, and one filed July 3, 1996) with two one-sentence orders denying the motions on the same dates.

State responds that the trial court was not clearly erroneous in its finding because the crimes charged were serious and because Smith has now passed his eighteenth birthday.

This court has recently acknowledged that the age of the juvenile can be a critical factor in determining whether rehabilitative services are available at the juvenile level. *See Maddox v. State*, 326 Ark. 515, 931 S.W.2d 438 (1996); *Sanders v. State*, 326 Ark. 415, 932 S.W.2d 315 (1996); *Brooks v. State, supra*; *Hansen v. State*, 323 Ark. 407, 914 S.W.2d 737 (1996). *See also Hogan v. State*, 311 Ark. 262, 843 S.W.2d 830 (1992). At this writing, Smith is 19 years old, and the juvenile services available to him are virtually nonexistent. *See* Ark. Code Ann. § 9-28-208(d) (Supp. 1995); *Hansen v. State, supra*. Moreover, the charging information coupled with Detective Potter's description of the crimes confirms that the crimes, although property crimes, were intrusive to the victims and serious. In light of these two factors, the trial court was not clearly erroneous in denying transfer to juvenile court.

Smith also contends that he overwhelmingly met his burden to justify transfer to juvenile court and that the State failed to show that he could not be rehabilitated. This is essentially reargument of his first point. It suffices to repeat that the State, through Detective Potter, did show Smith's age, which has a direct bearing on his potential for rehabilitation.

Affirmed.