James BOOKER Jr. *v.* STATE of Arkansas

95-327                                          922 S.W.2d 337

Supreme Court of Arkansas
Opinion delivered May 28, 1996

*Eugene B. Hale,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Sandy Moll,* Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, James Booker Jr. appeals the order of the Hempstead County Circuit Court denying transfer of his case to juvenile court. This interlocutory appeal is statutorily provided in Ark. Code Ann. § 9-27-318(h) (Repl. 1993). Jurisdiction is properly had in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(12). We find no error and affirm the denial of the motion to transfer.

As provided in section 9-27-318(c), Booker was charged by information in circuit court, alleging that on or about January 14, 1994, he, along with two other juveniles, Mario White and Jay Lee, committed the offense of aggravated robbery, a Class Y felony, in violation of Ark. Code Ann. § 5-12-103 (Repl. 1993). Booker was born December 4, 1977, and was thus sixteen years of age at the time of the alleged offense.

The affidavit of probable cause states that on January 14, 1994, officers of the Hope Police Department responded to a robbery at Harry's Pawn Shop on South Walnut Street in Hope. Upon their arrival at the scene, officers observed that the owner of the pawn shop, Harry Phillips, had been struck numerous times in the head with an unknown object and knocked unconscious. The victim, Mr. Phillips, who was seventy-six years old at the time, was subsequently taken to the hospital for treatment. Officers noted that during the robbery, several handguns had been stolen from the pawn shop. Booker was subsequently arrested for the aggravated robbery. Upon Booker's arrest, police recovered two of the guns stolen from the pawn shop and noticed that Booker wore tennis shoes which matched footprints found at the scene.

Booker moved to transfer his case to juvenile court, and the circuit court conducted a hearing on the motion. The state called two witnesses, Detective Jeffery Neal, of the Hope Police Department, and Larry Johnson, of the Hempstead County Juvenile Probation Office. Booker then took the stand on his own behalf, and also presented testimony from his mother, Mrs. Michelle Booker, and his father, Mr. James Booker Sr.

Detective Neal testified that he had conducted an interview

with Booker, during which the boy's father and attorney were present. Detective Neal stated that Booker informed him that he (Booker) had gone into the pawn shop first, followed by Jay Lee, and that he (Booker) had been the first one to strike the victim. Detective Neal stated that he could not recall if Booker had told him that he had struck the victim with a crescent wrench, however, the detective stated that a crescent wrench was discovered at the scene and appeared to have blood on it. Detective Neal further testified that Booker stated they went to the pawn shop for the purpose of stealing guns. Detective Neal stated that the victim had suffered severe head injuries caused by a blunt instrument, and that a crescent wrench would be considered a blunt instrument.

Larry Johnson took the stand next for the state. Johnson testified that he had known Booker since the juvenile began having behavior problems at school in the seventh grade. Johnson stated that he was not aware of Booker committing any crimes prior to the robbery on January 14, 1994, but that since that time, he knew that Booker was being held at the Youth Services Center in Alexander, Arkansas, after pleading guilty to possessing a firearm. Johnson further stated that also subsequent to his arrest for the aggravated robbery on January 14, 1994, he was aware of Booker's involvement in another incident involving a firearm. Specifically, Johnson stated that he had been contacted by a man concerning an incident in which Booker and another youth had pulled a gun on the man's niece. Johnson stated that he had advised the man to contact the police, but was not aware whether the man had done so.

Booker then testified on his own behalf. Booker stated that he was doing well at the Youth Services Center, and that he was learning work skills, such as bricklaying. Booker said that he enjoyed his classes, that he was learning to behave himself, and that he felt he could be rehabilitated. As to the charges facing him, Booker stated that he had not struck the victim and that the robbery had been planned by Mario White and Jay Lee. On cross-examination, Booker stated that he was now telling the truth concerning his participation in the victim's beating, and that he had lied to Detective Neal in the statement he gave following his arrest.

Booker's mother then took the stand and stated that Booker was doing well at Alexander, and that his prospects for rehabilitation were good. Booker's father also testified that he felt his son was doing well at the Youth Services Center, and that his prospects for

rehabilitation were good.

At the close of all the testimony, Booker's attorney moved for additional time to provide the court with letters and reports concerning Booker's progress at the Youth Services Center. The court granted the motion, and stated it would reserve judgment on the issue of transfer until a later date. The court did, however, address Booker's motion for a probable-cause hearing, stating that it found there was ample probable cause concerning Booker's involvement in the aggravated robbery. In its order, the trial court summarily denied Booker's motion to transfer his case to juvenile court, and this interlocutory appeal followed.

Booker's sole point on appeal is that the circuit court erred in denying his motion to transfer the charge to juvenile court. In support of this point, Booker argues that the state failed to produce evidence showing that he was involved in a violent offense, or that the offense committed was one of a repetitive pattern of adjudicated offenses, or that appellant was beyond rehabilitation.

■ We have repeatedly held that the decision of the circuit court denying transfer to juvenile court will not be reversed unless the ruling was clearly erroneous. *See, e.g., Williams* v. *State,* 313 Ark. 451, 856 S.W.2d 4 (1993); *Vickers* v. *State,* 307 Ark. 298, 819 S.W.2d 13 (1991). Further, we have long recognized that it is the movant's burden to prove a transfer to juvenile court was warranted under section 9-27-318. *Williams,* 313 Ark. 451, 856 S.W.2d 4; *Pennington* v. *State,* 305 Ark. 312, 807 S.W.2d 660 (1991). This is a burden that Booker has not met.

■■ We recognize that pursuant to section 9-27-318(f), the determination that a juvenile should be tried as an adult must be supported by clear and convincing evidence. *See, e.g., Davis* v. *State,* 319 Ark. 613, 893 S.W.2d 768 (1995); *Sebastian* v. *State,* 318 Ark. 494, 885 S.W.2d 882 (1994). We have defined clear and convincing evidence as "that degree of proof which will produce in the trier of fact a firm conviction as to the allegation sought to be established." *Cole* v. *State,* 323 Ark. 136, 140, 913 S.W.2d 779, 781 (1996) (quoting *Cobbins* v. *State,* 306 Ark. 447, 450, 816 S.W.2d 161, 163 (1991)).

■ Section 9-27-318(e) provides that the circuit court shall consider the following factors when making the decision to retain jurisdiction or transfer the case to juvenile court:

(1) The seriousness of the offense, and whether violence was employed by the juvenile in the commission of the offense;

(2) Whether the offense is part of a repetitive pattern of adjudicated offenses which would lead to the determination that the juvenile is beyond rehabilitation under existing rehabilitation programs, as evidenced by past efforts to treat and rehabilitate the juvenile and the response to such efforts; and

(3) The prior history, character traits, mental maturity, and any other factor which reflects upon the juvenile's prospects for rehabilitation.

At the conclusion of Booker's transfer hearing, the court elected not to make a ruling so that Booker would be allowed to provide the court with pertinent documents that were not yet available. When the circuit court did, however, rule on Booker's motion, the specific reasoning of the court was omitted from the order. We recognize that our previous decisions have held that circuit courts are not required to make specific findings of fact in juvenile-transfer cases. *Williams*, 313 Ark. 451, 856 S.W.2d 4; *Vickers*, 307 Ark. 298, 819 S.W.2d 13. We do, however, encourage those courts to make such findings, as it would be most helpful to our review. Since we have not been provided with any factual conclusions in this case, we must determine whether, given the testimony and other evidence presented at the hearing, the circuit court's decision to retain jurisdiction is supported by clear and convincing evidence.

A review of the record in this case reveals that Booker was charged by felony information with committing aggravated robbery on January 14, 1994. Testimony indicates that Booker took part in the aggravated robbery of Harry's Pawn Shop, and that during the course of that robbery, the elderly victim, Harry Phillips, suffered severe head injuries from being struck with a blunt instrument. Booker initially admitted to police that he had taken part in the robbery and that he had been the one who first struck the victim. Booker further admitted that the reason they committed the robbery was to steal guns from the pawn shop. At the transfer hearing, Booker recanted his previous statement concerning his involvement in the victim's injuries and testified that he had not struck the victim.

■ The fact that Booker later changed his story concerning his personal participation in the victim's beating does not change the nature of the charges pending against him. In fact, in *Guy* v. *State*, 323 Ark. 649, 916 S.W.2d 760 (1996), we stated that, "[i]t is of no consequence that appellant may or may not have personally used a weapon, as his association with the use of a weapon in the course of the crimes is sufficient to satisfy the violence criterion." *Id.* at 654, 916 S.W.2d at 763 (citing *Collins* v. *State*, 322 Ark. 161, 908 S.W.2d 80 (1995)).

■ Appellant contends the state did not produce any evidence indicating that Booker was directly involved in the commission of a violent offense. Apparently, Booker is basing this argument on his testimony that he, himself, had not actually struck the victim during the robbery, and that he was merely a follower, rather than the mastermind behind the crime. For the reasons previously cited, as well as those set out below, Booker's argument must fail. The evidence shows that Booker and the two other boys went to the pawn shop to steal some guns, and that during the course of the crime they beat the elderly shop owner to the extent that he suffered severe head injuries. Although we have previously recognized that it is possible to commit the offense of aggravated robbery without the actual employment of violence, that was certainly not the case here. *See, e.g., Johnson* v. *State*, 307 Ark. 525, 823 S.W.2d 440 (1992). The circuit court could very easily have found that the evidence presented satisfied the first factor provided in section 9-27-318(e). This factor alone would have been sufficient reason for the circuit court's denial of transfer.

■ We have held that although a circuit court must consider all the factors listed in section 9-27-318(e), the court need not give each of the factors equal weight and it is permissible to give substantial weight to the criminal information. *Walker* v. *State*, 304 Ark. 393, 803 S.W.2d 502, *reh'g denied*, 304 Ark. 402-A, 805 S.W.2d 80 (1991). In fact, the criminal information, on its own, is sufficient to establish that the offense charged is of a violent and serious nature. *Davis*, 319 Ark. 613, 893 S.W.2d 768; *Vickers*, 307 Ark. 298, 819 S.W.2d 13. Moreover, proof of each factor need not be introduced against the juvenile for the circuit court to retain jurisdiction. *Davis*, 319 Ark. 613, 893 S.W.2d 768; *Hogan* v. *State*, 311 Ark. 262, 843 S.W.2d 830 (1992). The use of violence in the commission of a serious offense is a factor sufficient in and of itself for a circuit court

to retain jurisdiction of a juvenile's case, but the commission of a serious offense without the use of violence is not sufficient grounds to deny transfer. *Sebastian*, 318 Ark. 494, 885 S.W.2d 882; *Blevins v. State*, 308 Ark. 613, 826 S.W.2d 265 (1992). We find that there was ample evidence presented at Booker's hearing demonstrating that the offense committed was a serious one and that violence was employed by Booker in its commission.

Although we agree with appellant as to his second argument, that the record indicates Booker had no prior adjudicated offenses, we nonetheless find that the circuit court could properly have considered the testimony concerning Booker's subsequent criminal acts. The fact that subsequent to his arrest for aggravated robbery Booker was convicted of a charge involving his possession of a firearm and was committed to the Youth Services Center could have been considered by the circuit court as indicative of the juvenile's prospects for rehabilitation, as provided in section 9-27-318(e)(3). The testimony that Booker took part in a second subsequent offense involving his and another youth's pulling a gun on a girl is further evidence concerning his dim prospects for rehabilitation. We simply cannot say, in light of all the evidence presented at the hearing, that the circuit court's denial of transfer of Booker's case to juvenile court was clearly erroneous.

Affirmed.

ROAF, J., dissents for the reasons stated in *Butler v. State*, 324 Ark. 476, 922 S.W.2d 685 (1996) (ROAF, J., dissenting).

DUDLEY, J., not participating.