William Shiloh McCLURE *v.* STATE of Arkansas

96-1310                                      942 S.W.2d 243

Supreme Court of Arkansas
Opinion delivered April 7, 1997

*David H. McCormick*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant William Shiloh McClure appeals the order of the Pope County Circuit Court denying his motion to transfer the charges against him to juvenile court. We have jurisdiction of this interlocutory appeal. Ark. Sup. Ct. R. 1-2(a)(11) (as amended by *per curiam* July 15, 1996); Ark. Code Ann. § 9-27-318(h) (Supp. 1995). We cannot say the trial court's decision to retain jurisdiction of the case was clearly erroneous, and therefore we affirm.

Pursuant to the prosecutor's discretion in section 9-27-318(b)(1), Appellant was charged in circuit court with one count of delivery of a controlled substance, marijuana, a Class C felony, and two counts of delivery of a non-controlled substance represented to be a controlled substance, methamphetamine, Class B felonies. The information alleged that Appellant was born August 15, 1978, and that the crimes occurred on June 27, 1995, April 18, 1995, and May 12, 1995, respectively. According to the information, he was aged sixteen years when the crimes were committed.

Appellant moved to transfer the charges to juvenile court. After a hearing on the motion, the circuit court considered the three factors in section 9-27-318(e) and decided to retain jurisdiction of Appellant's case. Appellant was aged seventeen years when the hearing was held on his transfer motion. Appellant asserts five points of error in the transfer hearing. We find no merit to his assertions of error and affirm the circuit court's decision to retain jurisdiction.

## I. Procedure — Order of Proof

Appellant's first point of error is the manner in which the circuit court conducted the transfer hearing. At the hearing, the State presented two witnesses: James Krohn, Appellant's probation officer, and Aaron Duvall, a criminal investigator for the Pope County Sheriff's office. Appellant then moved for a directed verdict on the basis that the State had not met its burden of proof. Appellant then presented testimonies from three witnesses: himself, his mother, and Kenneth Canitz, the youth director at the Baptist church where Appellant sometimes attended. On appeal, Appellant claims this procedure was error because, as the moving party, it was his burden to prove the transfer was warranted. He contends he was prejudiced by the presentation of the State's case prior to his because that placed him in the position of having to rebut the State's evidence.

Generally, it is the moving party that carries the burden of proof. Specifically with respect to juvenile-transfer motions, a defendant seeking a transfer from circuit court to juvenile court

has the burden of proving that a transfer is warranted under section 9-27-318(e). *Ring v. State*, 320 Ark. 128, 894 S.W.2d 944 (1995). While it is clear that the circuit court did not follow the usual procedure of allowing the party with the burden of proof to present its evidence first, it is equally clear that Appellant did not object in any form or fashion to the unusual procedure of the hearing at issue. In fact, not only did Appellant participate in the hearing without objection, but he even moved for a directed verdict at the close of the State's case and then proceeded with evidence in his behalf.

It is well settled that we do not consider arguments on appeal that were not raised in the trial court. This is sometimes called the contemporaneous-objection rule, and this court has applied it in juvenile-transfer hearings. *See, e.g., Lammers v. State*, 324 Ark. 222, 920 S.W.2d 7 (1996).

## II. Decision to Retain Jurisdiction

Appellant contends the trial court's decision to retain jurisdiction of his case was clearly erroneous. We cannot agree.

A circuit court's decision to retain jurisdiction of criminal charges against a juvenile must be supported by clear and convincing evidence. Section 9-27-318(f); *Maddox v. State*, 326 Ark. 515, 931 S.W.2d 438 (1996). Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Holmes v. State*, 322 Ark. 574, 911 S.W.2d 256 (1995). When reviewing the denial of a motion to transfer to juvenile court, we view the evidence in the light most favorable to the State. *Kindle v. State*, 326 Ark. 282, 931 S.W.2d 117 (1996). We do not reverse a circuit court's decision to retain jurisdiction unless the decision is clearly erroneous. *Id.*

When deciding whether to retain jurisdiction of or to transfer a case to juvenile court, the factors for the circuit court to consider are the seriousness of the offense and whether the juvenile used violence in committing the offense; whether the offense is part of a repetitive pattern of adjudicated offenses leading to the conclusion that the juvenile is beyond rehabilitation in the juvenile

system; and the juvenile's prior history, character traits, mental maturity, or any other factor reflecting upon the juvenile's prospects for rehabilitation. Section 9-27-318(e). A circuit court does not have to give equal weight to each factor, nor does evidence have to be presented as to each factor. *Cole v. State*, 323 Ark. 136, 913 S.W.2d 779 (1996).

This court has often said that the serious and violent nature of an offense is a sufficient basis for denying a motion to transfer and for trying a juvenile as an adult. *Id.* at 141, 913 S.W.2d at 781 (quoting *Sims v. State*, 320 Ark. 528, 536, 900 S.W.2d 508, 513 (1995)). However, that a crime is serious without the use of violence is not a factor sufficient in and of itself for a circuit court to retain jurisdiction. *Sebastian v. State*, 318 Ark. 494, 498, 885 S.W.2d 882, 885 (1994).

Appellant relies heavily on *Sebastian*. Our statement in that case that the commission of a serious crime without the use of violence is not sufficient standing alone to retain jurisdiction does not mean that the commission of a serious crime without the use of violence is not a factor to be considered. Quite to the contrary, it may be considered; and when combined with evidence of either of the other two factors, it may, depending upon the particular evidence presented, constitute clear and convincing evidence to support a decision to retain jurisdiction.

It is not disputed that Appellant did not employ violence in the commission of these three offenses. However, these three offenses are serious — delivery of a controlled substance and non-controlled substances represented to be controlled substances, Class B and C felonies. There was some evidence that the deliveries at issue here occurred on school property. There can be no doubt about the seriousness of the increasing drug problem in our state. Those who deliver controlled substances contribute significantly to that problem. In addition, the charge of misrepresenting a non-controlled substance for a controlled substance is indicative of a poor character for dishonesty.

Evidence presented at the transfer hearing revealed the following concerning section 9-27-318(e)(2). On January 7, 1994, Appellant was ordered to receive treatment at the Youth Bridge

facility. On July 22, 1994, Appellant pleaded true to the charges of commercial burglary and theft. Appellant had been on probation and had completed the terms of his probation. Thus, Appellant had at least one prior adjudication and at least one attempt at rehabilitation under the juvenile system. One prior adjudication and attempt at rehabilitation does not a repetitive pattern make. Thus, we agree with the trial court that the evidence under this factor is neutral.

As for section 9-27-318(e)(3), the following evidence, as viewed most favorably to the State, was presented. Appellant had been suspended from school for fighting. He worked full-time and was interested in obtaining a GED, but had not done so because he was being given the "run-around." He was interested in attending college in Missouri, but did not know the name of the college. Appellant had once participated in the youth group at the First Baptist Church in Dardanelle, but had not done so in almost two years. Appellant had violated his curfew on the night of the unrelated murder of Kenneth Lloyd. In addition, he furnished ammunition to Kevin Lloyd, who had previously stated he wanted to kill his father Kenneth Lloyd, and then transported Kevin Lloyd shortly after hearing gunshots. All of this evidence indicates that Appellant's character traits are poor and his mental maturity is low.

Appellant is age eighteen or over and has not yet been sent to a juvenile justice facility for the crimes alleged in this case. We stated in *Maddox*, 326 Ark. 515, 931 S.W.2d 438, that young people over age eighteen can no longer be committed to the Division of Youth Services (DYS) for rehabilitation unless they are already committed at the time they turn eighteen. Ark. Code Ann. § 9-28-208(d) (Supp. 1995). The fact that Appellant cannot be committed to the DYS is highly relevant to his prospects for rehabilitation and is important to our review. *Maddox*, 326 Ark. 515, 931 S.W.2d 438.

Given the aforementioned facts, this case is distinguishable from *Blevins v. State*, 308 Ark. 613, 826 S.W.2d 265 (1992), where we reversed a circuit court's decision to retain jurisdiction of a juvenile who was charged with possession of a controlled sub-

stance with intent to deliver, had no prior adjudications, and attended school regularly and made passing grades. Here, we have the commission of a serious offense, a prior adjudication for two offenses that would have been felonies if committed by an adult, previous treatment under the juvenile justice system followed by violation of probation conditions, the failure to attend school or obtain a GED, and an impossibility of future rehabilitation with DYS due to age. The present case is thus even a stronger case for a circuit court's retention of jurisdiction than was *Hogan v. State*, 311 Ark. 262, 843 S.W.2d 830 (1992), where this court affirmed the denial of a transfer to juvenile court where the juvenile had no prior adjudications and was alleged to have committed three controlled-substance violations, one occurring on school grounds. Accordingly, we cannot say the trial court was clearly erroneous in denying the motion to transfer Appellant's case to juvenile court.

### III.   Prior Adjudications

As his third point of error, Appellant contends the trial court erred in admitting two documents into evidence. State's Exhibit 1 is a judgment and disposition order dated July 22, 1994, wherein Appellant pleaded true to the charges of commercial burglary and theft of property, Class C and B felonies respectively. State's Exhibit 2 is an order dated January 7, 1994, committing Appellant to the Youth Bridge facility in Fayetteville, Arkansas. Both documents were signed by Appellant's counsel; the same counsel he has in the present case.

Appellant objected to the admission of the two documents on the bases that they were not properly authenticated and were not properly certified in compliance with A.R.E. Rule 902. The trial court ruled that since Appellant's counsel had signed the two documents, he would not be surprised by their admission into evidence. Appellant does not challenge the accuracy of the contents of these documents or contend that these documents were originally entered against someone other than himself. Rather, he claims prejudice from the admission of these two documents by arguing that the trial judge would not have been able to determine that Appellant had violated the terms of his probation if they had not been admitted into evidence.

This claim of prejudice is simply without merit. Appellant testified that he was on probation and that he had violated his curfew on isolated occasions. He also testified that he had not completed his community service, although he stated he had not been asked to do so. His mother also testified that Appellant had not completed his community service. Given this evidence that Appellant violated the terms of his probation, Appellant's claim of prejudice from admission of these two documents is without merit. We cannot say the trial court abused its discretion in admitting the two documents.

Given our resolution of this issue, we need not address the State's argument that the rules of evidence do not apply in juvenile-transfer hearings.

## IV.   Statement

For his fourth point of error, Appellant contends the trial court erred in allowing Investigator Duvall to testify about a statement he took from Appellant concerning the unrelated murder of Kenneth Lloyd. He claims that the taking of the statement violated Ark. Code Ann. § 9-27-317 (Supp. 1995) because he did not have a parent or guardian present. The State responds that section 9-27-317 does not require that a parent or guardian be present before a juvenile can validly waive his rights and answer questions from a law enforcement officer. In his reply brief, Appellant concedes that the State's argument is correct and withdraws this point from our consideration.

## V.   Appellant's Complicity in an Unrelated Murder

As his final point of error, Appellant contends the trial court erred in going beyond the testimony of record and considering evidence it had heard in the unrelated case against Kevin Lloyd for the murder of his father Kenneth Lloyd. It is true that the trial judge considered evidence from the Lloyd murder case that Appellant had made available to Kevin Lloyd a coat that contained ammunition. However, it is not true that this evidence was beyond the evidence of record in this case. Moreover, Appellant

did not raise this argument to the trial court, although he most certainly could have.

Investigator Duvall testified to the following at the transfer hearing. Appellant told him that he talked to Kevin Lloyd on the night of Kenneth Lloyd's murder and that Kevin asked Appellant if he would bring him the jacket. Appellant thought he was taking the jacket to Kevin because it had some shotgun shells in it. Kevin had previously told Appellant that he wanted to use the shells to kill his father, although Appellant did not believe Kevin. Appellant took the jacket to Kevin's house and heard gunshots while waiting outside in a car. After a few minutes, Kevin came out of the house and got into the car with Appellant. Appellant refused to allow Kevin to go home with him, but took Kevin to another person's house. Kenneth Lloyd died from being shot with a shotgun. Kevin Lloyd was convicted of capital murder. Given this testimony, we cannot say that the trial court went outside the record when considering Appellant's actions in making the shotgun shells available to Kevin.

The trial judge stated from the bench that he was considering Appellant's actions in the Kenneth Lloyd murder and that Appellant could possibly be considered an accomplice. Even if the trial court improperly relied on its memory of Kevin Lloyd's trial, Investigator Duvall's testimony was entirely consistent with the court's recollection. Testimony of subsequent criminal acts is indicative of a juvenile's prospects for rehabilitation under section 9-27-318(e)(3). *Booker v. State*, 324 Ark. 468, 922 S.W.2d 337 (1996). Accordingly, we cannot say the trial court erred.

For the aforementioned reasons, we affirm the circuit court's decision to retain jurisdiction.

BROWN and IMBER, JJ., concur.

ROBERT L. BROWN, Justice, concurring. I concur in the result but write separately to emphasize my belief that juvenile-transfer hearings should be conducted subject to the Arkansas Rules of Evidence. On previous occasions, this court has decided various assignments of error related to the admission of evidence in juvenile-transfer hearings. *See, e.g., Beck v. State*, 317 Ark. 154, 876 S.W.2d 561 (1994)(involving hearsay and judicial notice objections); *Walker v. State*, 304 Ark. 393, 803 S.W.2d 502 (1991),

*reh'g denied*, 303 Ark. 402-A, 805 S.W.2d 80 (1991)(holding that a criminal information is only evidence that the defendant was charged with a violent crime).

This approach is not only sound but is supported by the evidentiary rules adopted by this court. Under Ark. R. Evid. 1101, the rules of evidence are to be applied in all actions and proceedings in the courts of this state, except as otherwise provided therein. Rule 1101 reads in pertinent part:

> (b) Rules Inapplicable. The rules other than those with respect to privileges do not apply in the following situations:
>
> . . . .
>
> (3) Miscellaneous proceedings. Proceedings for extradition or rendition; [preliminary examination] detention hearing in criminal cases; sentencing, or granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise.

Ark. R. Evid. 1101. Based on the plain language of this provision, the Arkansas Rules of Evidence contemplate an exception only for preliminary hearings on whether to detain in criminal cases. These hearings do not encompass juvenile-transfer hearings. Thus, juvenile-transfer hearings are not excepted from the application of the Arkansas Rules of Evidence.

Other jurisdictions have also determined that juvenile-transfer hearings must comport with the rules of evidence. *See, e.g., A.D. v. State*, 668 P.2d 840 (Alaska App. 1983); *In re Jose M.*, 620 A.2d 804 (Conn. App. 1993)[1]; *State v. Milk*, 519 N.W.2d 313 (S.D. 1994). Of particular significance is the decision of the Supreme Court of South Dakota in *State v. Milk, supra,* where the court determined that it was bound by the dictates of S.D. Codified Laws Ann. § 19-9-14 (1987), a provision analogous to Ark. R. Evid. 1101. The South Dakota Supreme Court said:

> Juvenile transfer hearings are clearly *not* included among the listed exceptions to the application of South Dakota Rules of Evidence.

---

[1] The Connecticut General Assembly has since eliminated juvenile-transfer, or waiver, hearings by requiring an automatic transfer from juvenile court to the regular criminal docket for juveniles of certain ages when charged with serious offenses. *See* 1995 Conn. Pub. Acts 225, now codified at Conn. Gen. Stat. 46b-127 (1997).

> Hearings held for the purpose of determining whether a juvenile matter should be transferred to adult court are "proceedings" held in the circuit courts of this state; thus, the rules of evidence are applicable.

*State v. Milk*, 519 N.W.2d at 315 (internal citation omitted)(emphasis in original).

As is the case under the laws of South Dakota, the Arkansas Rules of Evidence do not except juvenile-transfer hearings from the applicability of evidentiary rules. For this reason, I conclude that juvenile-transfer hearings must be conducted in accordance with the Arkansas Rules of Evidence.

IMBER, J., joins in this concurrence.