Mishon WRIGHT *v.* STATE of Arkansas

97-1042 959 S.W.2d 50

Supreme Court of Arkansas
Opinion delivered January 22, 1998

*Stephen E. Morley*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly S. Terry*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Mishon Wright appeals the order of the Pulaski County Circuit Court denying his motion to transfer the charges against him to juvenile court. We have jurisdiction of this interlocutory appeal. Ark. Sup. Ct. R. 1-2(a)(11); Ark. Code Ann. § 9-27-318(h) (Supp. 1997). We cannot say the trial court's decision to retain jurisdiction of the case was clearly erroneous, and therefore we affirm.

Pursuant to section 9-27-318(b)(1), Appellant was charged in circuit court, by two separate informations, with three counts of aggravated robbery, two counts of theft of property (one felony, one misdemeanor), and one count of committing a terroristic act. Appellant filed a motion to transfer the charges to juvenile court, asserting that his prior juvenile history does not indicate that he is incapable of being rehabilitated. Appellant asserted further that he was not of sufficient emotional maturity to appreciate the seriousness of the offenses for which he was charged. After a hearing on the motion to transfer, the circuit court decided to retain jurisdiction of the case, based upon Appellant's extensive juvenile record. Appellant was seventeen years old when the hearing was held on his transfer motion. Appellant now asserts that the trial court erred in refusing to transfer his charges to juvenile court. We find no merit to his assertion of error and affirm the circuit court's decision to retain jurisdiction.

During the transfer hearing conducted on July 10, 1996, Appellant presented the testimony of one witness, his mother Brenda Wright. Mrs. Wright stated that Appellant had a juvenile record, beginning in 1990, but that he had never been offered any type of counseling or rehabilitation program from the juvenile system. Instead, she stated, Appellant had only been punished by the juvenile system. She stated that the only violent offense for which Appellant had been involved was a third-degree battery that occurred in 1991, and that he had not been violent at home. She stated that during the time that Appellant was involved in the juvenile system, they were never offered family counseling or any kind of counseling at all. She stated that she could not recall

whether Appellant had ever been evaluated for counseling purposes. Her position was that Appellant had always been placed in the training school and that his emotional needs had been ignored by the juvenile system. She indicated that Appellant was currently in the training school, but that he was in a different program ("JUMP") than before and was doing well. She stated that Appellant was currently working on obtaining his high school equivalency diploma.

On cross-examination, however, Mrs. Wright admitted that when Appellant was placed on probation by the juvenile court, he was ordered to participate in various programs, including Stepping Stone Special Reintegration, Changing Directions, and Diversion programs. She also admitted that when Appellant was in the custody of the Offices of Youth Services (OYS), he received treatment, but she denied that the programs were actually treatment programs. She maintained that although Appellant may have been ordered to participate in such programs, no one followed through to make sure he actually participated.

The prosecution did not put on any testimony; instead, the prosecutor chose only to describe the basis of the current charges and to introduce into evidence the court records of Appellant's prior juvenile history. As to the charges listed in the first information, case number CR 96-1079, the prosecutor stated that on November 29, 1995, Appellant and several males approached Charles Williams, as he was walking down the street, and asked Williams what was up with his jacket, a Starter jacket. Appellant and the other males eventually jumped out of their car and attacked Williams and stole his jacket. One of the males had a gun and hit Williams with it. Williams later viewed a photographic lineup and identified Appellant as one of the persons who assaulted him and stole his jacket. Appellant was subsequently charged with aggravated robbery and theft of property.

As for the offenses charged in the second information, case number CR 96-1080, the prosecutor stated that Don Forrest and his son were sitting in their car at a railroad crossing, waiting for a train to pass, when a black male approached them and told them to get out of the car. Almost simultaneously, the guardrail at the

crossing came up and the train passed. Forrest then sped off in his car and the male fired three or four shots at the car, one of which entered the car and barely missed Forrest's son. Later that same date, at a nearby Fina station, Appellant approached Aletha Cannon, who was on the telephone, and demanded at gunpoint that she give him her car. Cannon complied. As a result of these two incidents, Appellant was charged with two counts of aggravated robbery, one count of theft of property, and one count of committing a terroristic act.

The prosecutor then offered as evidence Appellant's prior records as a juvenile offender, which demonstrated that he was found delinquent of the following offenses:

| | |
|---|---|
| October 10, 1990 | *Theft of Property*; Appellant placed on probation for three months, ordered to attend school regularly, and to write a letter of apology to the victim. |
| March 25, 1992 | *Third-Degree Battery*; Appellant placed on indefinite probation, ordered to pay restitution to the victim in the amount of $1,006 and to complete the Diversion program. |
| March 11, 1993 | *Fleeing*; Appellant continued on probation and ordered to enter and complete the Stepping Stone Special Reintegration program, Diversion program, and to participate in the Changing Directions program over the summer. |
| August 16, 1993 | *Theft by Receiving (of an automobile) and Fleeing*; Appellant committed to OYS and ordered to pay restitution to the victim in the amount of $457. |
| December 15, 1993 | *Obstructing Governmental Operations*; Appellant was ordered detained and his probation officer was instructed to pursue placement for him at Watershed; Appellant was subsequently released to his mother for twenty-four-hour supervision and was ordered to attend Watershed on a daily basis. |
| November 22, 1994 | *Breaking and Entering*; Appellant committed to OYS. |

May 6, 1996 *Minor in Possession of a Handgun on School Property and Obstructing Governmental Operations*; Appellant committed to OYS until the age of eighteen, with a recommendation that he be placed in the serious offender program and that he receive counseling and educational programs.

The records further reflect that during the time that Appellant was engaging in the above offenses, from 1990 through 1996, his probation was revoked several times by the juvenile court. Additionally, Appellant failed to appear for various hearings, requiring the juvenile court to issue "pick up" orders for his return. Similarly, during this time period, both his mother and his father failed to appear for various hearings, resulting in the court's issuance of show cause orders for them, with his mother being held in contempt of court on one occasion. After hearing the testimony and receiving the evidence, the trial court made the decision to retain jurisdiction of the current charges in circuit court on the basis of Appellant's extensive juvenile record.

■ A defendant seeking a transfer from circuit court to juvenile court has the burden of proving that a transfer is warranted under section 9-27-318(e). *McClure v. State*, 328 Ark. 35, 942 S.W.2d 243 (1997). A circuit court's decision to retain jurisdiction of criminal charges against a juvenile must be supported by clear and convincing evidence. Section 9-27-318(f); *McClure*, 328 Ark. 35, 942 S.W.2d 243. Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Id.* When reviewing the denial of a motion to transfer to juvenile court, we view the evidence in the light most favorable to the State. *Id.* We do not reverse a circuit court's decision to retain jurisdiction unless the decision is clearly erroneous. *Id.*

■ When deciding whether to retain jurisdiction of or to transfer a case to juvenile court, the factors for the circuit court to consider are: (1) the seriousness of the offense and whether the juvenile used violence in committing the offense; (2) whether the offense is part of a repetitive pattern of adjudicated offenses leading to the conclusion that the juvenile is beyond rehabilitation in

the juvenile system; and (3) the juvenile's prior history, character traits, mental maturity, or any other factor reflecting upon the juvenile's prospects for rehabilitation. Section 9-27-318(e). A circuit court does not have to give equal weight to each factor, nor does evidence have to be presented as to each factor. *McClure*, 328 Ark. 35, 942 S.W.2d 243; *Cole v. State*, 323 Ark. 136, 913 S.W.2d 779 (1996).

Appellant does not dispute the seriousness of the offenses with which he is currently charged. In fact, he concedes that the charges against him contain violence. Notwithstanding that concession, he argues that when the evidence is considered as a whole, the trial court's decision was erroneous because the testimony given by Mrs. Wright establishes that he is not beyond rehabilitation and that he should be dealt with by the juvenile system, rather than the adult penal system. We disagree.

 The trial court was clearly justified in denying the transfer of the current charges to juvenile court based solely on the fact that Appellant's prior juvenile court record indicates that he is beyond rehabilitation by the juvenile system. Mrs. Wright's testimony that Appellant was never offered any treatment or rehabilitation programs by the juvenile court system was directly contradicted by the juvenile records presented by the prosecution. Appellant's prior juvenile record is not only extensive, but also demonstrates a pattern of offenses that have escalated in seriousness, with the last offense involving Appellant's possession of a handgun at school. Moreover, the current offenses charged in circuit court appear to be part of a repetitive pattern of offenses, especially those charged in the second information. Where, as in the present case, there is evidence that the current felony charges were part of a repetitive pattern of offenses, that past efforts at rehabilitation in the juvenile court system have not been successful, and that the pattern of offenses has become increasingly more serious, these factors alone prevent us from holding that the trial court's ruling on the transfer motion was clearly erroneous. *Sebastian v. State*, 318 Ark. 494, 885 S.W.2d 882 (1994).

 Additionally, the fact that Appellant is now nineteen years old is relevant to his prospects for rehabilitation in

the juvenile court system and is a factor that this court has considered important in reviewing the denial of a transfer motion. *Jensen v. State*, 328 Ark. 349, 944 S.W.2d 820 (1997). We agree with the State's argument that Appellant cannot be committed to a juvenile facility for rehabilitation based upon the current charges unless he is currently committed to such a facility. Appellant argues that because he was in the custody of the Office of Youth Services at the time of the transfer hearing, "he might well be a candidate to stay there." Appellant's argument is unpersuasive. This court has repeatedly stated that although Ark. Code Ann. § 9-28-208(d) (Supp. 1997) provides for an extension of the commitment time for juveniles beyond age eighteen under certain circumstances, "it presupposes that the youth was committed upon reaching eighteen and that the commitment will continue." *Id; see also Brooks v. State*, 326 Ark. 201, 929 S.W.2d 160 (1996); *Hansen v. State*, 323 Ark. 407, 914 S.W.2d 737 (1996). Thus, because the record in this case is devoid of any evidence that Appellant is currently committed to the Office of Youth Services, it is not apparent that Appellant's commitment could be extended pursuant to section 9-28-208(d).

■ Accordingly, given that Appellant's current age may prevent him from being committed to a juvenile facility, that his prior juvenile record demonstrates a lengthy and escalating pattern of offenses, and that he concedes that the current charges involve violence, we hold that the trial court's decision to retain jurisdiction of the current charges was not clearly erroneous. We note, however, as the State has pointed out, that the one count of misdemeanor theft of property must be filed in juvenile court, as the prosecutor has no discretion to file that charge in circuit court. *See* section 9-27-318(a)(3). We therefore affirm the decision of the trial court, with the modification that the misdemeanor theft charge be transferred to the jurisdiction of the juvenile court.

Affirmed as modified.