983 S.W.2d 908 (1998)
335 Ark. 521
Joshua M. HEAGERTY, Appellant,
v.
STATE of Arkansas, Appellee,
No. 98-848.
Supreme Court of Arkansas.
December 21, 1998.
*909 Hubert W. Alexander Jr., Jacksonville, for appellant.
Winston Bryant, Att'y Gen., by: Mac Golden, Asst. Att'y Gen., Little Rock, for appellee.
ROBERT L. BROWN, Justice.
This appeal concerns the order of the trial court denying appellant Joshua M. Heagerty's motion to transfer his six drug cases to juvenile court. The matter was first appealed to the Court of Appeals, which reversed the trial court. See Heagerty v. State, 62 Ark. App. 283, 971 S.W.2d 793 (1998). The State petitioned this court to review the matter, and we agreed. We reverse the Court of Appeals decision and affirm the trial court's denial of the transfer.
On May 7, 1997, Joshua Heagerty was charged in circuit court with six counts of delivery of a controlled substance in violation of Ark.Code Ann. § 5-64-401 (Repl.1997). These charged offenses occurred between August 24, 1996, and September 24, 1996. On June 3, 1997, Heagerty filed a Motion to Transfer the case from circuit court to juvenile court. He based his motion on the fact that he was presently seventeen years old (his date of birth is July 14, 1979), that he had no criminal record, and that there were sufficient rehabilitation programs available to him in juvenile court through the Division of Youth Services.
On July 8, 1997, a hearing was held on Heagerty's motion. It was six days before his eighteenth birthday. At the hearing, Heagerty's mother, Sheila Heagerty, testified that her son had no prior criminal record, and that it was only after she and her ex-husband got a divorce, that he began having trouble. He stopped participating in school activities, including sports, and his grades went down. Mrs. Heagerty testified that after a drug-possession charge in December 1996 or January 1997 in Pulaski County juvenile court which later was dismissed, she sent her son to Recovery Way, a private drug rehabilitation center in Oklahoma. After he returned from Recovery Way, he got A's and B's and graduated from high school. He began attending recovery meetings and regularly attended church. She further testified that Heagerty began working full time and enrolled for the fall semester at Arkansas State University in Jonesboro.
An undercover narcotics investigator for the Lonoke County Sheriff's Department, Jason *910 Young, also testified at the hearing. Officer Young stated that he made the first drug buy from Heagerty on August 24, 1996, one month after Heagerty turned seventeen. Some, but not all, of the drug buys occurred on a Cabot public school parking lot. He added that the charges were not filed until nine months later in order to protect his identity as an undercover officer in the investigation, and not for purposes of taking away Heagerty's rehabilitation potential in juvenile court.
After the hearing, the trial court denied Heagerty's motion to transfer, finding that the six narcotics buys showed a "repetitive pattern." His precise ruling from the bench follows:
All right, the court has heard the testimony and certainly this court always finds it a tragedy when young people get themselves in a position where they have to hire lawyers and their parents and other people have to come and plead for them and that sort of thing. I don't know whether the charges are true or not. I don't know anything about the details. I wasn't sure about the testimony whether or not it was six charges arising out of four sales or four different times or whether it was actually six different times but it doesn't matter. This court finds that the six buys shows a repetitive pattern. The motion will be denied.
The question for this court to resolve is whether the trial court clearly erred in denying Heagerty's motion to transfer. When this court grants review of a decision made by the Court of Appeals, we review the case as if it had been originally filed in our court. Thompson v. State, 333 Ark. 92, 966 S.W.2d 901 (1998). We will not reverse a trial court's determination of whether to transfer a case to juvenile court unless that decision is clearly erroneous. Jones v. State, 332 Ark. 617, 967 S.W.2d 559 (1998).
Under Arkansas law, the trial court must consider certain factors in making its decision of whether to transfer a case to juvenile court. See Ark.Code Ann. § 9-27-318(e) (Repl.1998). Section 9-27-318(e) reads:
(e) In making the decision to retain jurisdiction or to transfer the case, the court shall consider the following factors:
(1) The seriousness of the offense, and whether violence was employed by the juvenile in the commission of the offense;
(2) Whether the offense is part of a repetitive pattern of adjudicated offenses which would lead to the determination that the juvenile is beyond rehabilitation under existing rehabilitation programs, as evidenced by past efforts to treat and rehabilitate the juvenile and the response to such efforts; and
(3) The prior history, character traits, mental maturity, and any other factor which reflects upon the juvenile's prospects for rehabilitation.
This court has previously held that the party seeking the transfer has the burden of proving that a transfer is warranted under § 9-27-318(e). See, e.g., McClure v. State, 328 Ark. 35, 942 S.W.2d 243 (1997).[1] If the movant meets that burden, a transfer will be made unless there is clear and convincing countervailing evidence to support a finding that the movant should remain in circuit court. Ark.Code Ann. § 9-27-318(f) (Repl.1998); Sanders v. State, 326 Ark. 415, 932 S.W.2d 315 (1996). McClure v. State, supra. Clear and convincing evidence is "that degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established." McClure, 328 Ark. at 39, 942 S.W.2d at 245. A circuit court does not have to give equal weight to each of the three statutory factors; nor does evidence have to be presented regarding each factor. Wright v. State, 331 Ark. 173, 959 S.W.2d 50 (1998).
Heagerty claims that he met the burden of proof necessary to transfer the matter to juvenile court. He claims that the testimony of his mother regarding his behavior *911 before and after the alleged drug offenses occurred proves that he is an excellent candidate for rehabilitation in the juvenile system. He takes issue with the trial court's finding that the six charged offenses are part of a repetitive pattern and argues that the alleged offenses occurred between August 24, 1996, and September 24, 1996, and could not be a repetitive pattern of adjudicated offenses as § 9-27-318(e)(2) requires. Heagerty further emphasizes that the prosecutor did not produce any evidence other than the seriousness of the offenses to warrant keeping the case in circuit court, which, he maintains, runs counter to our decision in Blevins v. State, 308 Ark. 613, 826 S.W.2d 265 (1992). Finally, he contends that Officer Jason Young waited almost nine months to arrest him so that he would be closer to age eighteen and, thus, not as susceptible to rehabilitation within the Division of Youth Services.
We conclude, nonetheless, that the trial court ruled correctly in this matter. The clear and convincing evidence found by the trial court obviously related to the repetition of the charged offenses. Heagerty is correct that the second criterion under the juvenile-transfer statute refers to "a repetitive pattern of adjudicated offenses," and not merely to charged offenses. Ark.Code Ann. § 9-27-318(e)(2) (Repl. 1998). This court, however, has looked to the multiplicity of serious charges as a legitimate factor to consider in connection with juvenile transfers. See Hogan v. State, 311 Ark. 262, 843 S.W.2d 830 (1992). In addition, we are not constrained by the trial court's rationale but may go to the record for additional reasons to affirm. Haynes v. State, 314 Ark. 354, 862 S.W.2d 275 (1993). And regarding the specificity of the trial court's findings, this court has observed in the past that the juvenile-transfer statute does not require the trial judge to make findings of fact to support its decision, even though it would be preferable for the judge to do so. See Booker v. State, 324 Ark. 468, 922 S.W.2d 337 (1996); Blevins v. State, supra; Evans v. State, 287 Ark. 136, 697 S.W.2d 879 (1985).
We do not believe that the case of Blevins v. State, supra, is controlling in this matter. In Blevins, we deemed a trial court's decision to try a sixteen-year-old as an adult for possession of fifteen rocks of crack cocaine to be clearly erroneous. The facts of the instant case, though, are closer to those in Hogan v. State, supra. In Hogan, the defendant was charged as an adult with two delivery-of-marijuana offenses and two delivery-of-cocaine offenses. He was arrested at school, and following his arrest, he was also charged with possession of crack cocaine with intent to deliver. He filed a motion to transfer his case to juvenile court on the basis that even though he was now eighteen, he had been seventeen at the time of the alleged offenses. At the hearing, he introduced evidence of no prior record, a 3.0 grade point, school leadership and sports participation, plans to attend college, and the absence of violence employed in the alleged crimes. The trial court denied the motion, distinguishing the facts of the case from those in Blevins. We affirmed and said:
The fact that no commitment under juvenile jurisdiction could result from a transfer due to Hogan's age and the fact there are multiple charges of a serious nature, one of which involves possession of a significant amount of crack cocaine on school grounds, compel us to conclude that the trial court's decision was not clearly erroneous.
Hogan, 311 Ark. at 265, 843 S.W.2d at 831 (citation omitted).
Here, as in Hogan, Heagerty was seventeen at the time of the charged offenses. Though Hogan was eighteen at the time of his juvenile-transfer hearing, Heagerty was six days short of eighteen when his hearing was held. Heagerty is nineteen at this writing. He argues that this fact does not mean that his chance for rehabilitation within the Division of Youth Services is non-existent. However, there is no question but that his age adversely reflects upon his prospects for rehabilitation. See Ark.Code Ann. § 9-27-318(e)(3) (Repl.1998). Ark.Code. Ann. § 9-28-208(d) reads:
Commitment shall not exceed the eighteenth birthday of a youth, unless the Department of Human Services' State Institutional System Board determines that an adequate facility or facilities are available *912 for youths eighteen (18) years of age or older.
This court has said that "although § 9-28-208(d) extends the commitment time beyond eighteen in certain circumstances, it presupposes that the youth has already been committed to the State Division of Youth Services prior to reaching eighteen." Rice v. State, 330 Ark. 257, 260, 954 S.W.2d 216, 218 (1997). We certainly disagree with Heagerty that his voluntary treatment at Recovery Way in Oklahoma equates to commitment to a youth services facility.
There are, of course, alternatives within the juvenile program to commitment to a youth services facility for those between the age of eighteen and twenty-one, including probation, fines, voluntary community service, suspension of driving privileges, and residential detention with electronic monitoring. See Ark.Code Ann. § 9-27-330 (Repl. 1998). But commitment itself is lacking as a rehabilitative prospect for Heagerty. And though Heagerty makes the claim that the almost nine-month delay in arresting him was a ruse to place him outside the jurisdiction of the juvenile court, he offers no proof to sustain his suspicion. We view Officer Young's explanation that he had to remain undercover during that period of time owing to other ongoing investigations as entirely reasonable.
Accordingly, as in Hogan we hold that because of Heagerty's multiple charges, the fact that some drug deliveries occurred on school grounds, and the diminished rehabilitation prospects in Youth Services due to his age, the trial court was not clearly erroneous in denying transfer of this matter to juvenile court. We affirm the decision of the trial court and reverse the decision of the Court of Appeals in Heagerty v. State, 62 Ark.App. 283, 971 S.W.2d 793 (1998).
Affirmed.
GLAZE and IMBER, JJ., concur.
NEWBERN and THORNTON, JJ., dissent.
TOM GLAZE, Justice, concurring.
I concur. First, I would point out that this court reviews the trial court's decision, not the court of appeals. Here, the trial court denied the appellant's motion to transfer, and the abstract reflects that the trial court denied appellant's motion because "six buys show a repetitive pattern." That issue has been considered and decided in this court's majority opinion. However, I would point out that the appellant never argued below or on appeal that the court erred in not considering probation options provided under Ark. Code Ann. §§ 9-27-330 and 9-27-339 (Repl. 1998). These statutory provisions apparently were introduced into argument on appeal in the court of appeals' majority opinion. In short, this court cannot reverse a trial court's decision based on an argument not presented below.
Even if §§ 9-27-330 and -339 could be considered on appeal, the interpretation given these provisions by the court of appeals' majority opinion and the dissenting opinion in this court is erroneous. Section 9-27-330 provides additional alternatives for juveniles placed on probation. Some of these options are electronic monitoring, volunteer community service, and suspension of driving privileges. Section 9-27-339 comes into play when the juvenile violates those conditions. Under § 9-27-339, if the court should find the juvenile violated the terms of his or her probation, the court may (1) extend probation, (2) impose additional conditions of probation, (3) make any disposition that could have been made at the time probation was imposed, or (4) commit the juvenile to a juvenile detention facility for an indeterminate period not to exceed ninety days.
As I read these two statutes together, the juvenile contemplated is one who is under eighteen years of age, because a person older than eighteen could not be committed to a juvenile detention facility upon his or her probation revocation. Undoubtedly, the General Assembly intended to offer juvenile courts additional options in delinquency cases, but it did not provide that those options should also be provided to adults. While I think the result the court of appeals and the dissenting opinion want to reach *913 could be beneficial, such remedies for young adults like the appellant must come from the General Assembly.
IMBER, J., joins this concurrence.
DAVID NEWBERN, Justice, dissenting.
In order to retain jurisdiction over charges brought against a juvenile defendant, a circuit court must find "by clear and convincing evidence," based upon the three factors set forth in Ark.Code Ann. § 9-27-318(e)(Repl.1998), that the "juvenile should be tried as an adult." Ark.Code Ann. § 9-27-318(f)(Repl.1998). Such a finding must be reversed if it is clearly erroneous. Sanford v. State, 331 Ark. 334, 348, 962 S.W.2d 335, 342 (1998). A trial court's finding "is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed." Noland v. Noland, 330 Ark. 660, 672, 956 S.W.2d 173, 179 (1997).
Application of the three factors set forth in Ark.Code Ann. § 9-27-318(e) leaves me with the "definite and firm conviction" that the charges brought against appellant Joshua M. Heagerty should be transferred to the Juvenile Court. The finding of the Lonoke County Circuit Court that "clear and convincing evidence" warranted its retention of jurisdiction was "clearly erroneous."

1. Serious and violent offense
Section 9-27-318(e)(1) directs the Circuit Court to consider "[t]he seriousness of the offense" with which the juvenile is charged and "whether violence was employed by the juvenile in the commission of the offense." Mr. Heagerty is alleged to have committed multiple drug offenses on school property.
No doubt the alleged offenses are "serious," but there is no allegation of the use of violence. The mere fact "that a crime is serious without the use of violence is not a factor sufficient in and of itself for a circuit court to retain jurisdiction." McClure v. State, 328 Ark. 35, 40, 942 S.W.2d 243, 246 (1997). See also Green v. State, 323 Ark. 635, 641, 916 S.W.2d 756, 759 (1996) ("Seriousness alone is not a sufficient basis to refuse the transfer."); Cole v. State, 323 Ark. 136, 141-42, 913 S.W.2d 779, 782 (1996); Blevins v. State, 308 Ark. 613, 826 S.W.2d 265 (1992).
Mr. Heagerty is charged with having committed purely nonviolent offenses, and thus the alleged offenses, by themselves, did not warrant the Circuit Court's retention of jurisdiction in this case. Consideration of § 9-27-318(e)(1) contributes nothing to the decision to retain jurisdiction in the Circuit Court.

2. Prior adjudicated offenses
Next, § 9-27-318(e)(2) directs the Circuit Court to consider "[w]hether the offense is part of a repetitive pattern of adjudicated offenses which would lead to the determination that the juvenile is beyond rehabilitation under existing rehabilitation programs, as evidenced by past efforts to treat and rehabilitate the juvenile and the response to such efforts."
The statute plainly asks whether the juvenile is "beyond rehabilitation under existing rehabilitation programs," and that determination rests solely upon (1) whether the offense or offenses charged in the present action are "part of a repetitive pattern" of previously adjudicated offenses, and (2) the responses of the juvenile to any past efforts to treat and rehabilitate him or her.
Mr. Heagerty has no record of previously adjudicated offenses, and his only effort to receive treatment and rehabilitation at Recovery Way in Oklahoma proved successful. These facts are undisputed. The offenses with which Mr. Heagerty is charged in the present action, then, are not part of any "repetitive pattern" of previously adjudicated offenses, and we have, as the Court of Appeals observed, "no evidence of a failed attempt at rehabilitation." Heagerty v. State, 62 Ark.App. 283, 288, 971 S.W.2d 793, 795 (1998). There is no showing that Mr. Heagerty is "beyond rehabilitation," and consideration of § 9-27-318(e)(2) also clearly suggests transfer.
The majority suggests that a circuit court, in evaluating a juvenile's transfer motion, may consider the fact that the information *914 alleges a "multiplicity of serious charges" against the juvenile even though, at the time the transfer motion is considered, the charges are obviously not "adjudicated offenses" under § 9-27-318(e)(2). The majority cites Hogan v. State, 311 Ark. 262, 843 S.W.2d 830 (1992) in support of its suggestion.
A sufficient response is that Ark.Code Ann. § 9-27-318 does not permit a circuit court to retain jurisdiction on the ground that the information alleges multiple charges against the juvenile. The majority itself acknowledges that § 9-27-318(e)(2) refers only to "adjudicated offenses" and "not merely... charged offenses," and it does not question the holding of the Court of Appeals that the "plain language" of § 9-27-318(e)(2) "does not allow mere nonadjudicated charges, no matter how numerous, in and of themselves to be proof of recidivism." Heagerty v. State, 62 Ark.App. at 288, 971 S.W.2d at 795. As that Court correctly observed, § 9-27-318(e)(2) "necessarily presupposes prior adjudications in the juvenile justice system." Id. Thus, under the controlling statute, a "multiplicity of serious charges" alleged against the juvenile in the information provides no basis for a circuit court's retention of jurisdiction.
Any contrary rule suggested by Hogan v. State, supra, must yield to the plain language of § 9-27-318. In the Hogan case, we affirmed the denial of a transfer motion in part because the information alleged "multiple charges of a serious nature." We did not, however, explain how the "multiplicity of charges" in the information satisfied any of the three statutory factors in § 9-27-318(e). Since our decision in Hogan, moreover, we have not repeated the suggestion that the mere filing of multiple charges against a juvenile has any bearing on the factors that a circuit court must consider under the statute, and we have never sustained a circuit court's finding of a "repetitive pattern" under 9-27-318(e)(2) based upon unadjudicated offenses or unproven charges in an information. Thus, the statements in the Hogan case that are referred to in the majority opinion are contrary to the governing statute and are therefore erroneous. They should not be followed here.

3. Prospects for rehabilitation
Finally, § 9-27-318(e)(3) directs the Circuit Court to consider the juvenile defendant's "prior history, character traits, mental maturity, and any other factor which reflects upon the juvenile's prospects for rehabilitation."
This third factor virtually requires transfer of Mr. Heagerty's case to Juvenile Court. The evidence overwhelmingly demonstrates that Mr. Heagerty's "prospects for rehabilitation" are strong. As the Court of Appeals observed, Mr. Heagerty, on account of the treatment he received at Recovery Way, "was on the road to rehabilitation even before the charges had been filed against him." Heagerty v. State, 62 Ark.App. at 288, 971 S.W.2d at 795.
The majority concludes, however, that the fact that Mr. Heagerty is currently 19 years old and thus cannot be "committed" to a youth-services facility "adversely reflects upon," and "diminish[es]," "his prospects for rehabilitation." I strongly disagree with the majority on this point.
It is true that a juvenile over the age of eighteen cannot be "committed" to the Division of Youth Services. See Ark.Code Ann. §§ 9-27-331(a)(1)(Repl.1998); 9-28-208(d)(Repl.1998). It is also true that, in our past decisions, we have said that a juvenile has little chance for rehabilitation in the juvenile justice system if he or she cannot be "committed" to a Youth Services facility. In Rice v. State, 330 Ark. 257, 260, 954 S.W.2d 216, 218 (1997), we "dispensed" with the juvenile's rehabilitation arguments and focused solely on his age. We said that, because the juvenile was eighteen, "his potential for rehabilitation within the juvenile system is nil." We concluded that the juvenile was "beyond the age when he can be rehabilitated in the juvenile justice system." See also Smith v. State, 328 Ark. 736, 740, 946 S.W.2d 667, 670 (1997); Jensen v. State, 328 Ark. 349, 353, 944 S.W.2d 820, 822 (1997); Brooks v. State, 326 Ark. 201, 204, 929 S.W.2d 160, 162 (1996)("The chance for rehabilitation within the Division of Youth Services is nonexistent *915 when a commitment cannot be had for a young person older than 18.").
The current Juvenile Code was enacted in 1989. Some two years later, in Bright v. State, 307 Ark. 250, 251, 819 S.W.2d 7, 8 (1991), we observed for the first time that a juvenile offender's ineligibility to be "committed" to a facility was an important factor in assessing his or her "prospects for rehabilitation." But see Evans v. State, 287 Ark. 136, 142-43, 697 S.W.2d 879, 883 (1985)(making similar observation with respect to prior Juvenile Code). Since the Bright case, we have not departed from that interpretation of the Juvenile Code of 1989.
In the present case, however, we are asked for the first time to reconsider our holdings in the above cases in light of certain amendments to the Juvenile Code passed by the General Assembly in 1995. Those amendments appear at Ark.Code Ann. § 9-27-330 (Repl.1998), and their effect, as the Court of Appeals observed, was to expand "the dispositions available to the juvenile court upon a finding of delinquency." Heagerty v. State, 62 Ark.App. at 290, 971 S.W.2d at 796. Even if a juvenile is over the age of eighteen and is therefore ineligible to be "committed" to a youth-services center, other rehabilitation programs are now available to him or her pursuant to § 9-27-330. The "alternate dispositions," aside from commitment to a youth-services center, include, among others, the following: probation, fines, restitution, community service, and "residential detention with electronic monitoring."
In light of the "alternate dispositions" now available under § 9-27-330, it is no longer true that a juvenile's prospects for rehabilitation are "nil" simply because he or she cannot, on account of age, be "committed" to a Youth Services facility. The General Assembly has made other rehabilitation programs available to juveniles regardless of their age. Section 9-27-330 clearly obligates the courts to assess a juvenile's prospects for rehabilitation in light of those alternate programs, and thus we can no longer "dispense" with a juvenile's arguments concerning rehabilitation by focusing solely on his or her age. The General Assembly, acting within its authority, has simply "changed the law" on this issue, and our duty is to follow it.
The majority, however, stubbornly clings to case law that originated prior to the current § 9-27-330. While acknowledging the various rehabilitation programs now available to Mr. Heagerty, the majority obsesses over the fact that commitment is not a "rehabilitative prospect" for Mr. Heagerty. Under the current § 9-27-330, however, that fact is no longer dispositive of the question posed by § 9-27-318(e)(3)i.e., whether Mr. Heagerty has any prospect for rehabilitation in the juvenile justice system. He clearly does in light of the recently amended statute.
The majority's decision in this case will result in a trial in a circuit court where a young college student who is at least well on the road to rehabilitation will face the possibility of an extended prison sentence because he cannot be "committed" by a juvenile court. Instead, he will face the prospect of being "committed" to an institution where his prospects for sustaining his rehabilitation will indeed be "nil."
I respectfully dissent.
THORNTON, J., joins in this opinion.
NOTES
[1] The issue of whether the juvenile or prosecutor has the burden of proof in juvenile-transfer cases has been called into question in concurring and dissenting opinions by justices of this court. See Thompson v. State, 330 Ark. 746, 958 S.W.2d 1 (1997) (Newbern, J., concurring) (Brown, J., concurring in part; dissenting in part).