Asa John JONGEWAARD *v.* STATE of Arkansas

CA 00-92                                    29 S.W.3d 758

Court of Appeals of Arkansas
Division I
Opinion delivered October 25, 2000

*Mason Law Firm, P.L.C.*, by: *G. Chadd Mason*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Jeffrey Weber*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Asa John Jongewaard prosecutes this interlocutory appeal from the decision by the Washington County Circuit to deny his motion to transfer a criminal case to juvenile court. Appellant, charged with one count of commercial burglary, nine counts of breaking or entering, and three counts of theft of property, argues that the circuit court's decision to retain jurisdiction is clearly erroneous because the findings of fact issued by the court did not enumerate the ten factors set out in Act 1192 of 1999. We disagree and affirm.

On August 25, 1999, the Washington County Prosecutor filed an amended felony information against appellant and two other persons for commercial burglary, five counts of breaking or entering, and one count of theft of property. The information was modified on September 22, 1999; four additional breaking or entering charges and two additional theft of property charges were added. Appellant moved to transfer the case to juvenile court, and a transfer hearing was conducted on October 27, 1999.

The circuit judge heard testimony from appellant, his parents, a family friend, and a juvenile intake officer. During direct examination, appellant testified that he and two friends were arrested in Fayetteville, Arkansas, for breaking into cars and into a Coors beer facility. He testified that the crimes occurred on two or three different nights, and involved seven or eight cars. According to appellant, he and his friends "did it just for something to do, and were under the influence of alcohol when we committed the crimes." He stated that the idea of breaking into the Coors facility originated when he and several friends were at a shopping center, that one of his friends came up with the idea, and that he had never broken into any other buildings before. He stated that his cousin kicked down the door at the facility, and that he and two other friends ran inside and took a couple of cases of beer. After they drank several beers, they decided to break into some cars. Appellant testified that he participated in the car thefts by tearing out one

or two CD players and speakers and helping his friends lift equipment out of the cars, that his friends used a crowbar to break the windows of the cars, and that they would rip out everything they could. Appellant testified that everything that was stolen was sold, but that he did not receive any benefit from the sale. He admitted his involvement in stealing the items, loading them, and transporting them. Appellant also admitted that on another occasion prior to this event, he and his friends had broken into two or three cars after drinking alcohol. He stated that his purpose for committing the criminal activity was to just go along, and he expressed remorse. Appellant also stated that he had never been arrested prior to August 1999, and that the only contact he had with juvenile court occurred when he was referred for truancy.

Appellant's testimony during cross-examination revealed numerous contradictions.[1] When the trial judge asked appellant why his testimony at trial differed greatly from statements made during his initial interview with the police, appellant responded that he had been confused and scared after his arrest. He admitted making contradictory statements to the police, but said that he could not understand the officers or hear them so he just agreed or disagreed.

---

[1] For instance, appellant admitted telling the police that he took speakers and amplifiers from a white Volvo on March 23, 1999, even though he testified during direct examination that he had never been involved in car thefts prior to August 1999. Although he testified that he remembered telling the police about four vehicles on University of Arkansas lots, he denied any participation in the car break-ins that occurred. Appellant admitted discussing campus car break-ins with the police. Although he remembered telling the police that he and a friend took a Pioneer CD out of a red "Slugbug;" took two Rockford fifteens and a Punch sixteen amp out of a Jeep located by the football stadium; and CD players from a red Honda Civic and another vehicle near Yocum Hall; he adamantly denied participating in the criminal activity at the hearing. Appellant testified that he sat in the car and did not participate in the Colt Square incidents. He then admitted putting his head inside of a Thunderbird. However, he stated that his cousin would pull up to cars, break the windows, remove items, and that he would stay in the car, other than the one time he stuck his head in the Thunderbird and the time his cousin handed him a golf club, which he threw in the back seat. Appellant again denied involvement in any break-ins at the University, or at the Metro. He then admitted that he walked into an RV at the Metro, and admitted talking to the police about Colt Square car thefts and "doing" some vehicles there. Appellant also admitted stating to the police "we all decided to rob cars for kicks and thrills because there was really nothing else to do." However, appellant testified at the hearing "when I said 'we' were involved, I meant that I was there, not that I had participated in any way." On direct examination he told the court that he had told the truth to police officers. However, he told the court on cross that his statements to the police were not accurate because he had been beaten by the cops and he was scared and alone in a little room for fifteen hours. He then said the police didn't beat him for fifteen hours, but they beat him when he was first arrested.

The court also heard testimony from Jimmy Blakemore and from appellant's parents. Blakemore, a retired teacher and friend of appellant's family, testified that appellant was a model juvenile in terms of respect for his family, adults, and other people. He testified that if the court gave appellant a second chance, appellant would have the support of his family. Appellant's parents testified that appellant became more respectful and seemed remorseful for his acts following his arrest. Appellant's father stated that his son's grades had improved, that he was attending class regularly, and working part-time. He also testified that he had placed more restrictions on appellant and curtailed some of his freedom.

John Michael Dunn, an intake officer with the Washington and Madison County Juvenile court, also testified. Dunn testified that appellant had been classified as Family In Need of Services on July 26, 1999, and ordered to attend school. He testified that appellant did not appear for a review hearing set for October 1999. As a result of appellant's failure to appear, Dunn stated that a contempt hearing was set. However, the contempt hearing was not held because appellant was in jail.

The trial court denied the motion for transfer. In doing so, the trial court mentioned several factors, including: 1) the fact that appellant originally admitted to the police that he and his friends committed between twenty and thirty felonies, and that he changed his story in court; 2) that appellant testified that his criminal conduct occurred within two or three days despite proof that the conduct began in March 1999; 3) appellant's lack of credibility; 4) that appellant and his friends broke into a commercial establishment to steal intoxicants; and 5) the interest of the community in the court retaining jurisdiction, given the frequency of the types of crime committed. The court also pointed to the fact that although appellant was classified FINS in July 1999, his criminal conduct continued after that date. It found that the offenses were committed in a premeditated, willful, and to some extent "aggressive" manner, and that appellant was equally culpable with his co-defendants. The court noted that appellant appeared to have the maturity and sophistication of an eighteen-year-old. Based on the fact that appellant was seventeen, the court found appellant's prospects remote for rehabilitation in the juvenile system because the juvenile court would only have jurisdiction for a limited time. The court entered an order containing written findings of fact that denied

appellant's motion to transfer. On appeal, appellant argues that the circuit court erred because its findings of fact did not detail its decision on the ten factors listed in the statute that now governs transfer of cases between circuit and juvenile court.

■ In 1999 our juvenile code and the statutes governing juvenile jurisdiction and proceedings underwent substantial changes with the enactment of Act 1192, which contained no emergency clause and became effective on July 30, 1999. One statute affected by the 1999 amendments is Arkansas Code Annotated section 9-27-318 (Supp. 1999), which governs transfer of cases between circuit and juvenile courts. Because trial courts must follow procedural rules in effect at the time of a proceeding, section 9-27-318, as amended, applies to transfer hearings held after July 30, 1999. This is true even when the incident leading to the proceeding occurred prior to July 30, 1999. *See Trammell v. State*, 70 Ark. App. 210, 214, 16 S.W.3d 564, 567 (2000).

Juvenile and circuit courts have concurrent jurisdiction over juveniles who, at the age of at least sixteen years, engage in conduct that if committed by an adult would constitute a felony. *See* Ark. Code Ann. § 9-27-318(c)(1) (Supp. 1999). Upon a motion by any party, the court where the charges are filed must conduct a hearing to decide if the court should retain jurisdiction or transfer jurisdiction to another court having jurisdiction. *See* Ark. Code Ann. § 9-27-318(e) (Supp. 1999).

■ Prior to 1999, section 9-27-318 listed three factors for the court to analyze when determining whether to retain or transfer jurisdiction.[2] *See* Ark. Code Ann. § 9-27-318(e) (Repl. 1998). The circuit court was not required to weigh each factor equally, and there was no requirement that a party introduce proof of each element. *See Bell v. State*, 317 Ark. 289, 291, 877 S.W.2d 579, 580 (1994). Section 9-27-318, as amended by Act 1192 of 1999, now requires that the court consider ten factors before deciding whether to retain or transfer jurisdiction and requires the court to make

---

[2] The previous factors included: 1) the gravity of the offense, and if violence was used; 2) if the offense was part of a repetitive pattern that demonstrated the offender was beyond rehabilitation; and 3) the previous history, character, maturity level, and other pertinent information that revealed the juvenile's possibility for rehabilitation. *See* Ark. Code Ann. § 9-27-318(e) (Repl. 1998).

written findings.[3]  *See* Ark. Code Ann. § 9-27-318(g) (Supp. 1999).

■ A defendant bears the burden of proving the necessity of a transfer from circuit court to juvenile court. *See Wright v. State*, 331 Ark. 173, 178, 959 S.W.2d 50, 52 (1998). Once the defendant meets this burden, the State must show countervailing evidence that warrants the circuit court retaining the case. *See Kindle v. State*, 326 Ark. 282, 283, 931 S.W.2d 117, 118 (1996). If the court finds that clear and convincing evidence supports trying a juvenile as an adult, it must enter an order to that effect. *See* Ark. Code Ann. § 9-27-318(h) (Supp. 1999). Evidence is clear and convincing when it invokes a strong belief in the facts it seeks to prove. *See Kindle*, 326 Ark. at 283, 931 S.W.2d at 118. We will not reverse a circuit court's decision to retain jurisdiction unless we are firmly convinced that the decision is clearly erroneous after we have viewed the evidence in the light most favorable to the State. *See Ray v. State*, 65 Ark. App. 209, 215, 987 S.W.2d 738, 741 (1999).

We hold that the trial court did not clearly err where the findings of fact rendered on appellant's motion to transfer did not explicitly detail the rulings on the ten factors contained in Ark. Code Ann. § 9-27-318 (Supp. 1999). The abstract fully supports the conclusion that the factors were considered by the trial court.

---

[3] Section 9-27-318, as amended, lists the factors as follows:

1) the seriousness of the alleged offense and whether the protection of society requires prosecution as an extended juvenile jurisdiction offender or in circuit court; (2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner; (3) whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted; (4) the culpability of the juvenile, including the level of planning and participation in the alleged offense; (5) the previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence; (6) the sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated like an adult; (7) whether there are facilities or programs available to the court which are likely to rehabilitate the juvenile prior to the expiration of the court's jurisdiction; (8) whether the juvenile acted alone or was part of a group in the commission of the alleged offense; (9) written reports and other materials relating to the juvenile's mental, physical, educational and social history; and (10) any other factors deemed relevant by the court.

Ark. Code Ann. § 9-27-318 (Supp. 1999).

■ The trial court correctly observed that appellant is charged with thirteen felony offenses, of which four are designated as Class C. It cannot be disputed that appellant's alleged offenses are serious in nature.

■ Appellant appears to misconstrue the language in the second factor as requiring the court to determine if the alleged offense occurred in an "aggressive, violent, premeditated *and* willful manner." The language actually requires the court to consider if the act was "committed in an aggressive, violent, premeditated *or* willful manner." According to appellant's testimony, the idea of breaking into the Coors facility was discussed at Evelyn Hills Shopping Center. Appellant and his friends left the shopping center and went to Coors. His cousin kicked the door in; appellant and his friends ran inside, stole some beer, and left. Appellant testified that after he and his friends drank the beer, they went to Taco Bell where his friends decided to break into some cars. Appellant and his friends left Taco Bell and went to Red Lobster, Goldies, Firestone and various other locations that appellant couldn't remember to break into cars. A crowbar was used to smash windows to facilitate the break-ins. Appellant's testimony that his friends actually broke the windows and that his participation consisted solely of ripping out one or two CD players and equipment does not lessen the fact that, as an accomplice, he is equally culpable for the aggressive acts committed. Based on appellant's testimony alone, a trier of fact could be firmly convinced that his conduct was aggressive, premeditated, violent, or willful.

■ Appellant argues that his lack of prior arrests and absence of previous adjudications of delinquency serve as ample proof that he had no prior criminal history that warranted his transfer of the charges to juvenile court. He narrowly interprets subsection (g)(5) as applying only to prior juvenile adjudications, not FINS classifications or non-adjudicated charges. However, the plain language of (g) (5) states "the *previous history* of the juvenile, *including* whether the juvenile has been adjudicated a juvenile offender. . . and *any other previous history of antisocial behavior or patterns of physical violence.*" This language demonstrates that the legislature did not intend for the court to limit its consideration to prior delinquency adjudications. Therefore, the trial court correctly considered appellant's entire background.

■ Although appellant contends that he attended school regularly after he was classified FINS, we note that appellant was referred for truancy in July 1999, and arrested in August 1999. The school year did not begin until late August. It is impossible to know whether appellant's motivation for attending school regularly came from his FINS classification or his arrest. Although appellant completely discounts the fact that his arrest took place less than one month after his FINS classification, the trial court was not compelled to disregard appellant's arrest as evidence of appellant's continued disrespect for authority. Nor was the court required to ignore appellant's admission that he was involved in a March 1999 car break-in. This evidence demonstrates a history of antisocial behavior even without the FINS and truancy evidence.

■ Appellant was born July 7, 1982; he was seventeen years of age when arrested on these charges. On the date of his hearing, less than nine months remained before appellant turned eighteen. He is now eighteen. In its written findings, the trial court noted the short time period remaining before the juvenile court would have lost jurisdiction. As a result, the court found that appellant's prospects of being rehabilitated in the juvenile system were slim. Now appellant argues that the trial court erred in denying him the benefit of juvenile jurisdiction, particularly when he provided proof to the court that he benefitted from past contact with the juvenile system, as evidenced by his attending school regularly. This argument is unpersuasive. The record contains no proof of programs or remedies that might have rehabilitated him in the short time that he would have been in the juvenile system, and we have already observed that the trial court did not err when it considered appellant's history of antisocial behavior after he was classified FINS. Appellant forfeited the opportunity for further juvenile rehabilitation. The trial court did not take it from him.

■ Appellant also argues that the trial court erred when it based its decision, at least in part, on the high volume of property crimes in Washington County, and did not specifically consider if society needed protection from appellant as an individual defendant. Although appellant is charged with thirteen felonies, he admitted to the police when he was first arrested that he and his friends committed twenty to thirty felonies. Subsection (g)(10) allows the court to consider *any other relevant factor*. It was certainly proper for the trial court to consider the discrepancies between appellant's first

interview with the police and his testimony at trial and the high number of property thefts in Washington County, especially given appellant's admitted involvement in such crimes. Subsections (g)(3) and (g)(8) query whether the alleged offense was against property or persons and committed as part of a group. It is undisputed that appellant allegedly committed these offenses as part of a group, and that the alleged offenses were against property.

In summary, the record clearly demonstrates that the trial court carefully considered the ten enumerated factors in section 9-27-318 in making the determination to retain jurisdiction. Act 1192 of 1999 requires that the ten factors be considered and that the trial court render findings of fact. Contrary to appellant's argument, the act does not require trial judges to enumerate all ten factors in the findings. Instead, the statutory purpose is satisfied where the record shows that the trial court considered the factors in reaching the decision about whether to transfer a case or retain jurisdiction. We hold that the trial court's decision to retain jurisdiction is not clearly erroneous.

Affirmed.

JENNINGS and HART, JJ., agree.