## Lonnie BEULAH v. STATE of Arkansas

CR 00-1441                                    42 S.W.3d 461

Supreme Court of Arkansas
Opinion delivered April 26, 2001

*Jeff Rosenzweig,* for appellant.

*Mark Pryor,* Att'y Gen., by: *James R. Gowen Jr.,* Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Appellant Lonnie Beulah appeals the order of the circuit court denying his motion to transfer his case to juvenile court pursuant to Ark. Code Ann. § 9-27-318(l) (Supp. 1999). He argues specifically that the circuit court failed to make the requisite written findings as required by Act 1192 of 1999, Section 16, now codified at Ark. Code Ann. § 9-27-318(g) (Supp. 1999), and further failed to consider all of the factors as required by the same Act. We disagree with Beulah's reading of § 9-27-318(g), and we affirm the order of the circuit court.

On October 13, 1999, the Pulaski County Prosecuting Attorney filed a two-count felony information in Pulaski County Circuit Court against appellant Lonnie Beulah, his two brothers (Eric Deshawn Beulah and Derrick Lamont Witherspoon), and Erik James Bullock. The information alleged that the four defendants committed capital murder by causing the death of Heaven Pace, an unborn fetus, by beating the fetus's mother, Shiwona Pace, and further committed first-degree battery against Shiwona Pace by beating her so severely as to cause the miscarriage or stillbirth of the fetus. The felony information resulted from events that occurred on August 26, 1999, when the appellant was fifteen years old.

The appellant moved to have the matter transferred to juvenile court and on April 3, 2000, a hearing commenced on that motion before the circuit court.[1] At the hearing, Little Rock Police Detective Charles Weaver summarized the allegations against the appellant. He testified that on August 26, 1999, he investigated a homicide which stemmed from a residential robbery. The unborn fetus of the beaten victim was the homicide victim. The investigation, which included a statement given by the appellant, revealed that on that evening, Shiwona Pace, her five-year-old son, and her former boyfriend, Erik Bullock, were returning to Bullock's home. Upon entering the home, three men grabbed them and pulled them into the house. Bullock was taken to a back room, as was Ms. Pace's son. Ms. Pace, who was nine months pregnant, was then thrown to the floor in the living room where she was kicked and beaten by the three men. After the men left the home, Ms. Pace received medical treatment at Doctor's Hospital in Little Rock. The child she was carrying, however, was lost. Detective Weaver also testified that his investigation revealed that Bullock was to pay, or had paid, the appellant and the other defendants for their part in the incident.

---

[1] The hearing continued on April 6, 2000.

The State concluded its case by offering a copy of the appellant's juvenile record which showed that he was adjudicated delinquent on the misdemeanor charge of obstructing government operations on April 13, 1999.

As part of his case, the appellant submitted his school records as evidence and also called witnesses at the hearing. Greg Morris, director of the James H. Penick Boys and Girls Club in Little Rock, and Chris Robinson, an investment banker with a Little Rock firm, Crews and Associates, testified for the appellant. Mr. Morris described the appellant as "a very good kid" who was a regular attendee at the Boys Club. Mr. Morris testified that he knew the appellant well and that the appellant had been helpful in doing chores around his home and in "throwing" a paper route. The appellant was the product of a single-parent home, according to Mr. Morris, and his mother had struggled to raise her sons. Mr. Morris also testified that he thought the appellant was a "follower" of his older brothers in the alleged crime. Mr. Robinson described the appellant as an "outstanding young man" who also helped out in Mr. Robinson's home, played with Mr. Robinson's kids, and looked up to his older brothers. Both Mr. Morris and Mr. Robinson testified that the appellant had the potential to be a productive citizen in society.

When the hearing resumed on April 6, 2000, the appellant called William Ray Clark, the owner of a sports marketing firm in Dallas, Texas, as a witness. Mr. Clark testified about the appellant's impoverished background, and the fact that he was raised in a dilapidated home by a mother who did not work. He described the appellant as a "sweet kid" and "caring," but also a person who was "impressionable."

At the conclusion of the hearing, the circuit court said:

> All right. Well, I'm going to deny your motion to transfer and the very first reason for it is because of the very seriousness of the offense and whether violence was employed by the juvenile in the commission of the offense, and as you know, that's the very first prerequisite that we look at. But your motion will be denied and I will prepare an order reflecting the Court's decision.

After appellant's counsel reminded the circuit court that the 1999 legislation had amended the statute at issue by including ten factors for the court to consider regarding a transfer to juvenile court, the court responded, saying:

As I recall, I said the very first reason is because of that, then I think I said — you and I have trouble knowing what each other says — that there will be other reasons stated in my written opinion.

The circuit court later filed its order, which included the following findings and conclusions of law:

Due to the violent nature of this offense and the seriousness of the charge the Court concludes that Lonnie Beulah should be tried as an adult. In accordance with Arkansas Code Annotated § 9-27-318, the Court finds that the following factors apply to the defendant and require this Court to retain jurisdiction of this matter:

1. The seriousness of the offense of capital murder and the protection of society require this defendant to be prosecuted in circuit court.

2. From the testimony elicited at the hearing, it is this Court's determination that the alleged offense was committed in an aggressive, violent, premeditated and willful manner.

3. This alleged offense was committed against a person, and a death resulted.

4. The culpability of the juvenile is great in this case, in that there was planning on the part of the defendant to participate in the crime and a high level of participation in the crime.

5. The defendant has been previously convicted in juvenile court of a misdemeanor offense.

6. The defendant was part of a group in the commission of the alleged offense. In addition, the defendant gave a statement to the police that he was to be paid for his participation in the alleged offense.

For all of the above-stated reasons, it is this Court's determination that the defendant's Motion to Transfer to Juvenile Court is hereby denied.

The appellant appealed the circuit court's order to the Arkansas Court of Appeals, and that court affirmed the circuit court's decision in an unpublished opinion. We granted appellant's petition for review.

The appellant contends, as his sole point on appeal, that this case presents the question of whether Act 1192 of 1999, codified in part at § 9-27-318(g), requires the circuit court to deal in writing with all of the enumerated statutory factors in that section or only those which the circuit court desires to consider.

■■ On review, we consider the case as though it were originally filed in this court. *See Leaks v. State*, 339 Ark. 348, 5 S.W.3d 448 (1999) (citing *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998)). We will not reverse a trial court's determination of whether to transfer a case to juvenile court unless that decision is clearly erroneous. *See Heagerty v. State*, 335 Ark. 520, 983 S.W.2d 908 (1998) (citing *Jones v. State*, 332 Ark. 617, 967 S.W.2d 559 (1998)).

At issue here is § 9-27-318(g), which provides the factors a circuit court must consider in deciding whether to transfer a case to juvenile court:

(g) In making the decision to retain jurisdiction or to transfer the case, the court shall make written findings and consider all of the following factors:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution as an extended juvenile jurisdiction offender or in circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the court which are likely to rehabilitate the juvenile prior to the expiration of the court's jurisdiction;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the court.

Ark. Code Ann. § 9-27-318(g) (Supp. 1999). Prior to Act 1192 of 1999, this subsection set out three factors to be considered, but made no mention of written findings:

(e) In making the decision to retain jurisdiction or to transfer the case, the court shall consider the following factors:

(1) The seriousness of the offense, and whether violence was employed by the juvenile in the commission of the offense;

(2) Whether the offense is part of a repetitive pattern of adjudicated offenses which would lead to the determination that the juvenile is beyond rehabilitation under existing rehabilitation programs, as evidenced by past efforts to treat and rehabilitate the juvenile and the response to such efforts; and

(3) The prior history, character traits, mental maturity, and any other factor which reflects upon the juvenile's prospects for rehabilitation.

Ark. Code Ann. § 9-27-318(e) (Repl. 1998).

■ The appellant takes issue with the circuit court's failure to make written findings regarding each and every factor set out in § 9-27-318(g). In construing the law before the enactment of Act 1192 of 1999, we held that the circuit court did not have to give equal weight to each of the three statutory factors; nor did evidence have to be presented regarding each factor. *See, e.g., Heagerty v. State, supra,* (citing *Wright v. State,* 331 Ark. 173, 959 S.W.2d 50

(1998)); *McClure v. State*, 328 Ark. 35, 942 S.W.2d 243 (1997) (citing *Cole v. State*, 323 Ark. 136, 913 S.W.2d 779 (1996)).

█ Section 9-27-318(g), which codifies, in part, section 16 of Act 1192 of 1999, begins with the statement: "In making the decision to retain jurisdiction or to transfer the case, the court *shall make written findings and consider all of the following factors*[.]" Ark. Code Ann. § 9-27-318(g) (Supp. 1999) (emphasis added). This court strictly construes criminal statutes and resolves any doubts in favor of the defendant. *See Hagar v. State*, 341 Ark. 633, 19 S.W.3d 16 (2000) (citing *Graham v. State*, 314 Ark. 152, 861 S.W.2d 299 (1993)). However, this court also adheres to the basic rule of statutory construction, which is to give effect to the intent of the General Assembly. *See Garling v. State*, 334 Ark. 368, 975 S.W.2d 435 (1998) (citations omitted). Moreover, this court strives to give statutory words their ordinary and usual meaning. *See id.* (citing *Reed v. State*, 330 Ark. 645, 957 S.W.2d 174 (1997)).

█ In examining the language of the statute at issue, there is no indication that the General Assembly intended that the court make a specific finding as to each of the ten enumerated factors. It is only necessary that the court make written findings. The extent of the written findings is not specified. The court, however, must consider all of the factors. In this regard, we agree with the conclusion of the court of appeals that Act 1192 of 1999 does not require the circuit court "to enumerate all ten factors in the findings." *See Jongewaard v. State*, 71 Ark. App. 269, 279, 29 S.W.3d 758, 763 (2000).

██ The appellant further contends that due to the absence of any findings relating to § 9-27-318(g)(6), (7), and (9), it is clear that the circuit court did not consider those factors. We decline to leap to that conclusion. The circuit court was aware of its duty in this regard, both because of the language in § 9-27-318(g) and because defense counsel pointed out the fact that the court had to look to the ten factors. The circuit court's failure to specifically mention certain evidence presented by the appellant in its order does not mean that the court ignored the evidence or failed to consider it. *See, e.g., Butler v. State*, 324 Ark. 476, 922 S.W.2d 685 (1996). Furthermore, the appellant's contention that § 9-27-318(g) should be analogized to Rule 37.5 of the Arkansas Rules of Criminal Procedure actually works against him. That rule provides, in part, that "the circuit court shall . . . make *specific* written findings of fact with respect to *each factual issue* raised by the petition[.]" Ark. R. Crim. P. 37.5(i) (2000) (emphasis added). Section 9-27-318(g)

does not contain language with comparable specificity but only requires generally that written findings be made.

 The circuit court had the benefit of testimony from three witnesses whom the appellant presented — Greg Morris, Chris Robinson, and William Ray Clark. The court also had access to the appellant's school records which were admitted as an exhibit. We have no doubt that these witnesses and this evidence enabled the circuit court to consider the appellant's maturity and environment (factor 6), which Mr. Morris specifically testified to, his rehabilitation prospects (factor 7), and his educational history (factor 9).

We conclude that the circuit court's refusal to transfer the matter to juvenile court was not clearly erroneous. *Heagerty v. State, supra.*

Affirmed. Court of Appeals affirmed on review.

GLAZE, J., concurs.