Derrick Lamont WITHERSPOON *v.* STATE of Arkansas ·

CA CR 00-1288                                                46 S.W.3d 549

Court of Appeals of Arkansas
Division I
Opinion delivered June 13, 2001

*William R. Simpson, Jr.*, Public Defender, by: *Courtney McLarty*, Deputy Public Defender.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, Derrick Lamont Witherspoon, who was charged by an information filed in circuit court with the crimes of capital murder and first-degree battery, brings this interlocutory appeal from the circuit court's denial of his motion to transfer the case to juvenile court. Appellant argues on appeal that the circuit court clearly erred in denying his motion to transfer because the decision was not supported by clear and convincing evidence and because the circuit court considered improper evidence in making the decision. We affirm.

The felony information charged appellant, appellant's two brothers, Lonnie Beulah and Eric Beulah, and Erik Bullock with capital murder, asserting that, with premeditated and deliberated purpose, they caused the death of Heaven Pace. The information

further charged that they committed the crime of first-degree battery by causing physical injury to a pregnant woman, Shiwona Pace, causing her to suffer a miscarriage or stillbirth as a result of the injury. At the juvenile-transfer hearing, Charles Weaver, a homicide detective with the Little Rock Police Department, testified that he investigated the death of the unborn child. He stated that, on August 26, 1999, at 11:59 p.m., police responded to a report of a home-intrusion robbery. Shiwona Pace, who was expected to deliver her child the next day, was taken to a hospital for her injuries, where it was determined that her child was dead.

After learning of the child's death, Weaver went to the crime scene and spoke to Erik Bullock. Appellant objected to Weaver's testimony regarding what he was told by Bullock, arguing that such testimony was hearsay and its admission violated his right to confront witnesses against him. The State noted that Bullock was a codefendant, and the court overruled appellant's objections. According to Weaver, Bullock told him that when he and Shiwona Pace entered the residence, three or four black males who were in the residence removed him to the bedroom and left Pace in the living room, and they were both beaten.

Weaver testified that his investigation led him to appellant, appellant's older brother, Eric Beulah, and appellant's younger brother, Lonnie Beulah.[1] Weaver told the court that during an interview with appellant at the Pine Bluff Police Department, appellant gave a statement to police regarding the homicide. When appellant objected to Weaver's testimony, arguing that his statement to police should not be admitted into evidence because it was not voluntarily, knowingly, and intelligently given, the circuit court overruled the objection.

According to Weaver, appellant explained that he was approached by Eric Beulah, who told him that Bullock wanted them to beat up a woman because the woman was attempting to obtain money from Bullock by claiming that Bullock was the father of her child. Appellant was to go to Little Rock and wait for Bullock and Pace at Bullock's residence. Once there, they were to beat Pace. Appellant admitted that he pulled Bullock and Pace into the house, forced them to the ground, and "slapped on" Pace. Appellant stated that they possessed a BB gun and he wore a mask

---

[1] Lonnie Beulah was also charged in circuit court with these crimes and sought transfer of his case to juvenile court. The Arkansas Supreme Court recently affirmed the circuit court's denial of Beulah's motion to transfer. See Beulah v. State, 344 Ark. 528, 42 S.W.3d 461 (2001).

that resembled pantyhose and was black in color. Further, he thought he would be compensated by Bullock and he participated because he believed he would be paid.

On cross-examination, Weaver testified that Detective Eric Knowles was also present during the taking of appellant's statement. Appellant then argued that the court should not consider appellant's statement because the statement was involuntarily obtained, and the State had the burden of producing Detective Knowles at the hearing. The court overruled the objection, noting that a motion to suppress had not been filed.

The State established appellant's date of birth as December 15, 1981; thus, appellant was seventeen years of age at the time of the crime and eighteen at the time of the hearing. Through various exhibits, the State established that appellant was adjudicated a delinquent on three separate occasions. His first adjudication occurred on May 2, 1997, for theft of property, and he was placed on probation. On October 14, 1997, he was adjudicated a delinquent for aggravated robbery, and, on the same day, he was adjudicated a delinquent for theft of property. Appellant was placed on probation for two years for the two adjudications. On November 18, 1998, appellant's probation was revoked for failure to comply with the conditions of his probation, and, on December 1, 1998, appellant was committed to the Division of Youth Services for an indeterminate period of time, with a recommendation that he be placed in the serious-offender program. The commitment order noted that appellant "has been on intensive probation, refuses to obey probation rules, refuses to report for drug screens, [and] is missing school." The order further noted that appellant had been to drug treatment but had not gone to Alcoholic or Narcotics Anonymous meetings.

At the conclusion of the hearing, the circuit court denied appellant's motion to transfer. In a written order denying the motion to transfer, the court stated that because of "the seriousness of the offense and the degree of violence employed in the commission of the offense, combined with [appellant's] juvenile record which indicates that he has previously been adjudicated delinquent, this Court finds by clear and convincing evidence that [appellant] should be tried as an adult ... and hereby denies the Motion to Transfer to Juvenile Court."

On appeal from the circuit court's denial of his motion to transfer, appellant argues that he was denied a meaningful hearing

because there was no evidence to substantiate the serious and violent nature of the charges, noting that the victim did not testify at the hearing "and all other testimony was improperly admitted and considered by the trial court over objection." He argues that the circuit court should not have considered Weaver's testimony regarding what he was told by Bullock because such testimony was hearsay and denied appellant his right to confront witnesses against him. He contends that such testimony went not only to the seriousness of the offense but also to the degree of violence employed, both of which were reasons cited by the circuit court for retaining jurisdiction. He also argues that Weaver's testimony regarding appellant's statement to the detectives should not have been considered because Detective Knowles was present during the taking of the statement and the State failed to produce Knowles at the hearing on the motion to transfer. Finally, he argues that the court did not consider other factors which he contends were favorable to him.

▇▇▇▇ In determining whether to retain jurisdiction or to transfer the case, the circuit court considers all of the following factors:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution as an extended juvenile jurisdiction offender or in circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the court which are likely to rehabilitate the juvenile prior to the expiration of the court's jurisdiction;

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the court.

Ark. Code Ann. § 9-27-318(g) (Supp. 1999). The circuit court is not required to enumerate all ten factors in its written findings. *See Beulah v. State*, 344 Ark. 528, 535, 42 S.W.3d 461, 466 (2001). "The circuit court's failure to specifically mention certain evidence presented by the appellant in its order does not mean that the court ignored the evidence or failed to consider it." *Id.* "Upon a finding by clear and convincing evidence that a juvenile should be tried as an adult, the court shall enter an order to that effect." Ark. Code Ann. § 9-27-318(h) (Supp. 1999); *see also* Ark. Code Ann. § 9-27-325(h)(2)(C) (Supp. 1999). The circuit court's decision on whether to transfer the case to juvenile court will not be reversed unless the decision is clearly erroneous. *See Beulah*, 344 Ark. at 533, 42 SW.3d at 464. And, generally, the Arkansas Rules of Evidence apply to juvenile proceedings. *See* Ark. Code Ann. § 9-27-325(e) (Supp. 1999).

■ Even assuming, *arguendo*, that Weaver's testimony regarding what he was told by Bullock and his testimony regarding appellant's statement should not have been considered by the circuit court, we would still consider whether prejudice resulted from the admission of such evidence. *See Ring v. State*, 320 Ark. 128, 132, 894 S.W.2d 944, 946 (1995)(determining that there was no prejudice resulting from the circuit court's admission of a confession at the transfer hearing). Even though the victim did not testify, and despite appellant's contention that all other testimony was improperly admitted and considered by the circuit court over objection, Detective Weaver did present testimony regarding the seriousness of the offense and the degree of violence employed. Specifically, Weaver testified, without appellant's objection, that the case involved a home intrusion that resulted in injuries to one victim and the death of the victim's unborn child. That testimony alone sufficed to establish the serious and violent nature of the crimes. *See Brown v. State*, 330 Ark. 603, 607, 954 S.W.2d 273, 275 (1997)(finding there was a "meaningful hearing" when the evidence was presented through the testimony of police officers). Moreover, we also note that Weaver's testimony regarding what he was told by Bullock did not, as appellant contends, pertain to either the seriousness of the offense or the degree of violence employed. Bullock told Weaver that three or four black males entered the residence and beat Pace, and he did not describe in any detail the degree of violence employed or the seriousness of the offense. Again, even if we consider this testimony, we fail to see how appellant was prejudiced by it. Thus, the circuit court did not clearly err in denying appellant's motion to transfer.

■ Furthermore, the State presented, without objection from appellant, evidence regarding appellant's prior juvenile adjudications. We note that appellant's age, his three adjudications as a delinquent, his failure to comply with the conditions of his probation, and his commitment to the Division of Youth Services, amply shows the unlikelihood of rehabilitation through treatment of appellant as a juvenile. See Jongewaard v. State, 71 Ark. App. 269, 277-78, 29 S.W.3d 758, 762-63 (2000)(discussing the juvenile's previous history, his likelihood of rehabilitation, and his age). While appellant argues that the circuit court did not consider factors favorable to him, as we previously noted, the Arkansas Supreme Court has stated that the circuit court's failure to mention evidence does not mean that the court failed to consider it. For this reason also, we conclude that the circuit court's decision to deny appellant's motion to transfer the case to juvenile court was not clearly erroneous.

■ Finally, we also conclude that it was not error for the circuit court to consider the allegedly involuntary confession at the hearing, and that, in any event, we would not have had jurisdiction to consider whether a motion to suppress was improperly granted. Juvenile transfer hearings are held for the purpose of "determin[ing] whether to retain jurisdiction or to transfer the case to another court having jurisdiction." Ark. Code Ann. § 9-27-318(e) (Supp. 1999). The statute does not suggest that the court should also consider at that time motions to suppress. As the Arkansas Supreme Court has previously noted, not even matters such as a determination of probable cause are to be determined at juvenile-transfer hearings. See Brown, 330 Ark. at 607, 954 S.W.2d at 275. Clearly, the record in this case is not adequately developed for a determination of whether the confession was given involuntarily, and no motion to suppress was presented to the court prior to the hearing. We note that objections to the use of any evidence, including evidence of involuntary confessions or admissions of a defendant, on the grounds that the evidence was illegally obtained, are to be made by a motion to suppress filed not later than ten days before the date set for the trial. See Ark. R. Crim. P. 16.2(a)(3), (b) (2000).

■ Moreover, on appeal from the denial of a motion for transfer, this court may not consider a denial of an oral motion to suppress made at the hearing. The statute providing for appeals describes only appeals "from an order granting or denying the transfer of a case from one court to another court having jurisdiction over the matter." Ark. Code Ann. § 9-27-318(l) (Supp. 1999).

Affirmed.

NEAL and VAUGHT, JJ., agree.